Hillsborough,⟩
April 5, 1932. ⟩

GEORGIANA COTÉ, *Adm'x, v.* BACHELDER-WORCESTER COMPANY.

*Alfred J. Chretien* (by brief and orally), for the plaintiff.

*Wyman, Starr, Booth & Wadleigh* (*Mr. Wilbur F. Parker* orally), for the defendant.

BRANCH, J.   I.  The argument of the plaintiff with reference to the first question reserved by the trial court may be summarized as follows: "The widow is not suing for a wrong done to or on a right acquired by the employee, but for a loss to her, and on a right of her own." "It is a statutory right created by the statute for her benefit expressly made determinable at the time of the death of the employee, and not arising until then. . . . It follows that the law existing at the time of death should govern the extent of the recovery."

The provisions of the statute do not sustain this position.  No right of action is given to a widow as such.  The act in terms imposes upon employers liability for compensation only to their employees. "Such employer shall thereafter be liable to all workmen engaged in any of the employments specified in section 1 for any injury arising out of and in the course of their employment, in the manner provided in the following sections."  P. L., c. 178, s. 4.  If an injured workman dies, the amount of compensation due under the act is made payable to his legal representative for the benefit of such dependents or other persons as are entitled thereto.  *Ib. s.* 20.  The existence or non-

existence of dependents affects the amount of compensation recoverable by the personal representative, (*Ib. s.* 19) but no right of action for any loss suffered by such dependents is given to them by the act.

The statute might conceivably have been drawn in such a way as to give to every dependent of a deceased workman a separate right of action for the loss resulting to such dependent from his death, but no such purpose is discernible in the present act. On the contrary, it appears to have been framed on an entirely different theory, and the technique which had formerly been employed with reference to the survival of tort actions (P. L., c. 302, ss. 9-15) was here adopted. Instead of creating new rights of action in the dependents of a deceased workman, the act gave to the workman himself a new right to demand compensation for personal injury and provided that this right should survive to his personal representative for the benefit of his dependents. We, therefore, must conclude that the right to claim compensation from the defendant which plaintiff is now seeking to enforce, accrued at the time when the deceased received his injury and that the defendant's liability became fixed as of that date.

From these conclusions it follows that the plaintiff's rights are limited by the provisions of the law in force at the time of the accident. In order to bring the present case within the provisions of chapter 131 of the laws of 1931, it would be necessary to give retroactive effect to that statute. This result, if constitutionally permissible, (see constitution of New Hampshire, Part I, *article* 23) would involve a violation of the principles which were stated and examined at length in *Murphy* v. *Railroad*, 77 N. H. 573.

Although the decisions of other courts with reference to statutes of varying phraseology have only slight persuasive effect here, it is interesting to note that similar conclusions have been reached elsewhere with reference to the time when a right to compensation accrues and that the contrary decision reached by the supreme court of Minnesota in *State* v. *District Ct.*, 131 Minn. 96, has not met with judicial approval. *Thorpe* v. *Dept. of Labor*, 145 Wash. 261; *Quilty* v. *Company*, 96 Conn. 124; *Virden* v. *Smith*, 46 Nev. 208.

II. Section 19 of the compensation act provides that in case of death, if a workman leaves dependents, the amount of compensation, in cases of total dependency, shall be "equal to one hundred and fifty times the average weekly earnings of such workman when at work on full time during the preceding year during which he shall have been in the employ of the same employer. ..." The second question reserved by the trial court requires the construction of the language

above quoted, and more particularly the words, "when at work on full time during the preceding year."

The defendant argues that "full time" during a period of depression may well be less than full time when business is good; that if in a given year a workman works all the time that his employer has work for him to do he works "full time" for that year; that during the year preceding his injury the deceased worked for the defendant all the time that there was work for him to do; and hence, that the total amount of his earnings for the year, divided by the number of working weeks, accurately determines the amount of his "average weekly earnings . . . when at work on full time during the preceding year."

We have no disposition to deny the force of this argument. As a rational interpretation of the statute in the light of economic conditions it has received careful scrutiny, but countervailing considerations of controling force preclude its adoption. We think that the words "full time" in an industrial community like ours have acquired a definite significance which is generally recognized and well settled by popular usage. This term, like its close relatives part time and over time has reference to a customary or normal period of work. All of these terms assume that a certain number of hours customarily constitutes a day's work and that work for a certain number of days constitutes a week's work within a given industry or factory. One who works less than the usual number of hours per day is said to have a part time job. One who works more than the usual number of hours per day is said to work over time. When a factory runs only three days a week it is said to be running on part time and its employees say that they are only working part time. Full time ordinarily signifies the normal or customary period of labor per day or per week in the establishment where the workman is employed for the kind of work which he is hired to perform. "One who works only part of a day, or only two or three days out of a week, or only a few weeks out of the year, cannot be said to be working at full time." *Beaver Dam Company* v. *Hocker*, 202 Ky. 398.

"Words in a statute are to be construed according to the common and approved usage of the language unless they have acquired a peculiar and appropriate meaning in the law." *Colston* v. *Railroad*, 78 N. H. 284, 286; P. L., c. 2, s. 2. We think that "common and approved usage" attaches to the words "full time" the significance above set forth. We have already held that the word "accident" where it appears in the same statute "is used in its popular sense." *Boody v. Company*, 77 N. H. 208, 213; *Eaton v. Proctor, ante*, 398. This

is equally true of the term "full time." The act has been administered in the superior court for nearly twenty years upon this assumption. In this respect the mandate of the legislature has been executed with precision.

In the interests of complete accuracy it should be further stated that the statute has reference to the normal labor period of the particular workman who sustains injury, and if his daily or weekly working time is fixed by special contract, the period thus established will constitute his full time without regard to the custom generally prevailing in the establishment. These considerations, however, do not affect the present case.

We are told that this construction of the act "disregards the plain language of the statute. It eliminates any question of average weekly earnings during the year and substitutes therefor the workman's maximum weekly earning capacity on the particular job." The fallacy of this argument is well illustrated by the facts of this case. During the year in question there was a change in the wage schedule prevailing in the defendant's factory by which the pay of the deceased was reduced from forty-four to forty-two cents per hour. The lower rate was in force for approximately half the year. At the higher rate the plaintiff's normal weekly wage when working on full time was $22. At the lower rate it was $21, and the court, therefore, found that "his average earnings for the year preceding the accident would have been $21.50 per week if the defendant's factory had been running full time and he had worked all the time." In the case of a workman engaged upon piece work, wide fluctuations in weekly earnings may be reflected in the statutory average. If the current agitation for the adoption of a five day week or a six hour day is successful, important changes in the average weekly earnings of many workmen may result. It, therefore, seems plain that our interpretation of the act does not result in making "the workman's maximum weekly earning capacity" the basis for computing his compensation.

We, therefore, conclude, in accordance with the contention of the plaintiff, that the sum of $21.50 correctly represents the average weekly earnings of the deceased when at work upon full time during the year preceding his injury, and that this sum should be used as the basis for computing the amount of compensation which the plaintiff is entitled to recover, but that the total amount of her recovery is limited to $3,000.

*Case discharged.*

All concurred.