## 27871. OCEAN ACCIDENT AND GUARANTEE CORPORATION *v.* CARTER.

DECIDED MARCH 15, 1940. REHEARING DENIED MARCH 30, 1940.

*John M. Slaton, James J. Slaton,* for plaintiff in error.
*Maddox & Griffin,* contra.

MACINTYRE, J. Application for a hearing in this case by the Industrial Board was asked by counsel for the employee, R. A. Carter Jr. The director found in favor of the employee. The employer, Eagle Stove Works, and the insurance carrier, Ocean Accident & Guarantee Corporation, appealed to the board, and the award of the director, based on a wage of $30 per week (compensation being $15 per week), was affirmed. The employer and the insurance carrier appealed to the superior court, where the judge affirmed the award. On this writ of error the court is concerned only with a construction of the Code, § 114-402, which deals with the basis of computing compensation under the workmen's com-

pensation act. The director found, in part: "It is the decision and opinion of this director that even though the employer operated the plant three days per week and the claimant worked all of the three days each week [earning $15 per week], with the exception of time off for illness, . . that would not constitute, as contemplated under the workmen's compensation act, a full week's work. This director holds that compensation should be based on the average weekly earnings for like employment in the same community, as set out by the State and under several decisions rendered by our appellate courts." The compensation was awarded on the basis of $30 per week, and evidently was arrived at by the director by dividing $15 by 3 to ascertain the claimant's wage for one day, and then multiplying that by 6 in order to arrive at a basis for compensation. The Code, § 114-402, declares: "The basis for computing the compensation provided for in this title shall be as follows: The compensation of an injured person shall be computed on the basis of the regular wage received by the employee on the date of the accident. Where the injured person has not been receiving regular wages and has been employed for such a short period of time that it is impracticable to accurately determine his wages, the wages of emloyees of the same class, in the same employment, in the same locality, or, if that is impracticable, of employees of the same kind in neighboring localities shall be used as a basis for determining the wages of such injured employee."

Where the plan of the foundry was to operate three days in each calendar week, and the employee worked these three days in each calendar week for over ten months, except during the vacation period or during illness, and received $5 per day for each of the three days worked in each of such weeks, and thus received $15 regularly each week for the work done during each of these weeks, which might be termed the "work week" under the circumstances of this case, the "work week" would by law be constructively fixed at three days. The "work week" does not necessarily correspond with the calendar week. When the legislature in 1922 changed the law, it doubtless had before it for consideration the compensation acts in force in other States. It knew that the basic wage used in computing compensation varied in other States. In Minnesota the basic weekly wage was determined by multiplying the daily wage by 5 plus one half. Modin v. City Land Co., 189 Minn. 517 (250 N.

W. 73). In Kentucky (Beaver Dam Coal Co. *v.* Hocker, 202 Ky. 398, 259 S. W. 1010), and New Hampshire (Georgianna Cote *v.* Bachelder-Worcester Co., 85 N. H. 444, 160 Atl. 101, 82 A. L. R. 1239), it was provided that by statute wages must be "full time." In other States the basic wage was arrived at by multiplying the daily wage by six. If this court should hold that "regular wages" are only those wages earned during a six-day week, then what would be the situation where the operation of the wages and hours law of the United States prohibits employing a workman for six full days a week? Would the employer be held liable on the basis of a full six-day week wage where he is prohibited by a Federal statute from employing a person to that extent? The Georgia legislature, in its wisdom, did not choose to adopt a law as specific and definite as those cited, but instead used a plain, ordinary word to describe the *basic wage,* a word that would be flexible in its application to various kinds of business no matter what the conditions were under which they have to operate, to wit, the word "regular." The meaning of the word "regular" is understood to be "according to rule; formed after a uniform type." Funk & Wagnall's New Standard Dictionary; Webster's New International Dictionary. The "work week" or "regular work week" may be defined or fixed by the employer and the employee agreeing expressly that the "work week" constitutes so many days, which may or may not correspond with the full seven-day calendar week, or it may be fixed at any lesser number of days; but if the "work week" is not expressly defined or fixed by the parties, the law says the course of conduct of the parties may be such as constructively to fix the "work week" where the parties have adopted a rule or uniform type for paying and receiving wages, which has been followed consistently for a long enough period of time, so that it is practicable to determine accurately the employee's "regular wages" for a "work week." It might generally be said that under our statute one receiving a mere temporary wage is not receiving a regular wage. 71 C. J. 797.

In the instant case the regular work was three days per week, for which the employee received a regular wage of $15 per week. In other words, the unit of employment was the week, and this type of employment had been uniform for over ten months; and the mere fact that the time spent by the employee in earning his weekly wage was only three days does not prevent the wage so

earned, in accordance with a constant plan, from being regular. We might say that under the facts of this case a "work week" of three days had been established and observed by the parties for a sufficient length of time and with such uniformity as to become a *regular* "work week," and thus make the regular "work week" a week composed of three days, in contradistinction to a calendar week or any other week by whatever name known, and that the $15 here received regularly by the employee for the "work week" composed of three days was the basis for determining his regular wage on the date of the injury. Applying these principles to the facts in the case sub judice, the Industrial Board should have held that Carter was earning a regular wage of $15 per week, and that the rate of compensation was $7.50 per week instead of holding that compensation was based on a wage of $30 per week, and that he was entitled to $15 per week. The judge erred in affirming the award. The cases of *McBrayer* v. *Columbia Casualty Co.*, 44 *Ga. App.* 59 (160 S. E. 556); *Georgia Power Co.* v. *McCook*, 48 *Ga. App.* 138 (172 S. E. 78); *Metropolitan Casualty Co.* v. *Maloney*, 56 *Ga. App.* 74 (192 S. E. 320); and *Ætna Casualty & Surety Co.* v. *Prather*, 59 *Ga. App.* 797 (2 S. E. 2d, 115), are distinguishable on their facts from the instant case.

Judgment reversed. *Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MACINTYRE, J. The movant contends, that the construction by this court of the Code, § 114-402, re-establishes the law as it existed by virtue of the original act of 1920, which based compensation on the average weekly wage of the employee; that the court's decision fails to give effect to the intention of the legislature to change the basic wage from the "average weekly wage" to the "regular weekly wage;" and that under the court's decision the "average weekly wage" and the "regular weekly wage" amount to the same thing. Of course it is true that where an employee is receiving a "regular weekly wage" such wage is also the "average weekly wage," but the "average weekly wage" is not necessarily a "regular weekly wage." To illustrate: if an employee earning $1 per day works one day the first week, two days the second week, four days the third week, and has no work at all the fourth week, the average weekly wage of such employee would be $1.75 per week, which is arrived at by simply dividing the total sum earned

by the number of weeks during which it was earned. But under our decision $1.75 would not be a regular wage, because uniformity is lacking. Regularity of employment is not synonymous with continuity of employment, but rather indicates uniformity of the type of work, uniformity of the time worked, and uniformity of the amount paid for like units of time worked. We think our construction of this law will aid the steady, dependable workman, because we think it tends to encourage regularity of employment and fosters the workman's sense of security, and does not give a superior advantage to the irregular or temporary workman over a steady and dependable employee who has been regularly on and faithful to the job for many months or even years.

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*