29555. MARYLAND CASUALTY COMPANY *et al. v.* MORRIS.

240

DECIDED NOVEMBER 4, 1942.

*Haas, Gardner, Lyons & Hurt, Jones, Jones & Sparks,* for plaintiffs in error.

*Hines & Carpenter, C. B. McCullar,* contra.

SUTTON, J. Cornell-Young Company, hereinafter called the employer, was engaged in 1934 in building a bridge over the Oconee River and the highway approaches thereto in Baldwin County under a contract with the State Highway Department of Georgia. The work was a United States Public Works project. The contract under which the employer operated provided, among other things: "Skilled and unskilled labor shall not be permitted to work more than 30 hours in any one week, except that working time lost because of inclement weather or shutdowns during the period of employment in any one week may be made up during the succeeding week or weeks of any one calendar month." C. O. Morris, hereinafter referred to as the claimant, was employed in February, 1934, to work as a carpenter upon the project, and was not permitted to work and did not actually work more than 30 hours in any one week. The following arrangement was worked out by the employer applicable to all labor in the class of Morris: One shift of workers reported for duty and worked the first three days in the week, Monday, Tuesday and Wednesday, ten hours per day, making the maximum of 30 hours for that week. Thereupon another shift reported and worked the same number of hours Thursday, Friday and Saturday. This second shift reported again the following Monday and worked Monday, Tuesday and Wednesday. Thereupon the first shift returned and worked Thursday, Friday and Saturday of one week and Monday, Tuesday and Wednesday of the following week. All of the employees were paid biweekly and thus at such times were paid, on Saturday, for six days work, for three days in the week preceding the week of payment and for three days in the week of payment, no employee working more than three days in any one calendar week.

Morris, the claimant, was injured while at work on Tuesday, July 24, 1934. It is conceded that his injury resulted in total

disability which has continued to the present time. The accident was duly reported and on August 25, 1934, an agreement, purported to have been signed by the employee, the employer, and the insurance carrier, was entered into, though the employee denied signing the agreement and insisted that at the time he was not in condition to appreciate what he was doing if he signed it. The agreement was dated August 21, 1934, and provided for compensation at the rate of $6 per week, beginning July 31, 1934. It was filed with the Industrial Board, and on August 27, 1934, was approved by it, and on the same day a communication, entitled "Notice of award—approval of settlement," was mailed to the employee, the employer, and the insurance carrier, the written approval reciting that "If any party in interest doubts that the agreement made has been made strictly according to law he may address the department with an inquiry or complaint. It will receive prompt attention." Thereafter compensation of $6 per week was duly paid to the employee. It was reasonably established that he received a copy of this communication and he accepted the weekly payments, and on several occasions, where there was a slight delay, he wrote the carrier to forward the weekly award of $6.

On December 7, 1939, an attorney wrote the Industrial Board on behalf of the employee, contending that his regular wage at the time of his injury was $4 per day or $24 per week, and that the award should have been $12 per week, and that because of the alleged inadvertence and misapprehension of the facts a hearing should be had and the award corrected. A hearing was had on February 16, 1940, before a single director, who on September 20, 1940, made an award, finding as a fact that the employee, with the exception of certain lost time which he was allowed to make up, worked ten hours a day for three days a week at 40 cents an hour, that his regular wage was $12 per week, and that the carrier had paid $6 per week as compensation and that such payment, for a period of 291 weeks up to the date of the request for a rehearing, was strictly in accordance with the provisions of the workmen's compensation act. He further held that as the carrier had paid compensation in accordance with the law it was immaterial whether or not the employee had signed the agreement, and that the agreement having been formally approved by the Industrial Board, and there having been no appeal within the time required by law, the

order of approval, "which for all purposes is the same as an award rendered after a hearing," could not be modified or changed, and that the question of the rate of compensation payable to the claimant was res judicata. It was ordered that the employer and insurance carrier continue the payments of compensation at the rate of $6 per week.

The findings of the single director were based on the facts hereinbefore recited, and particularly on certain testimony of the claimant, quoted in the award as follows: "Q. You were getting forty cents an hour? A. Yes, sir. Q. And worked ten hours a day? A. Yes, sir. Q. And worked three days each week? A. I worked Thursday, Friday and Saturday and Monday and Tuesday and Wednesday. Then I drew $24 that Saturday. Q. But you worked only three days in any one week? A. Yes, sir. . . Under the contract with the Government they had to pay you 40 cents an hour? A. Yes, sir. Q. And couldn't work you more than thirty hours a week? A. That is right. Q. So you worked three days, ten hours each day, forty cents an hour? A. Yes. Q. And you say you got $24 a week? A. I did when I worked six days. They didn't pay me every week. They didn't pay me until I worked six days. Q. They paid you then $12 a week, didn't they? A. They paid me $24 when I worked six days. Q. Isn't it true they paid you every two weeks on the job, twice a month? A. Yes, that is what I told you. Q. And paid you $24 every two weeks? A. Exactly. Q. Which makes $12 a week? A. I worked three days this week and three days the next week, and the following Saturday they gave me $24. . . Q. You were working at another job when you were not on this job? A. Provided I could get it. Q. You knew you could only work three days a week and the rest of the time you tried to make some more money? A. Yes, sir. Q. At the end of every two weeks they gave you a check for $24? A. That is right. . . Q. I understood you to say there were two shifts working on the bridge at the time you were working, is that correct? A. Let me see if I can put it to you any plainer. . . The job went on regularly each week. It was somebody working on the job six days that the weather would permit. I went to work on Thursday morning and worked Thursday, Friday and Saturday and laid out on Sunday, went back and worked Monday, Tuesday and Wednesday. Then I quit. I hunted work somewhere else.

You can call it a shift or anything you may. Somebody else went in there and kept the job going just like I did when I went in on Thursday morning."

The award of the director was appealed to the board and was affirmed on December 10, 1940. The claimant appealed to the superior court of Baldwin County, and after argument in that court the judgment of the full board was reversed and the case was remanded to the board with direction that the award be modified by changing the amount of compensation from $6 to $12 per week, and that the difference be paid to the claimant, together with seven per cent. interest. The exception of the employer and insurance carrier is to that judgment.

The issues presented, as argued in the briefs of counsel, are: 1. Did the Industrial Board have jurisdiction to entertain the request of the claimant for a rehearing? 2. If so, has the claimant been paid compensation in accordance with the provisions of the workmen's compensation act? The latter issue involves the question whether the regular wage of the claimant at the time of his injury was $12 or $24 per week, it being conceded by counsel for the claimant that if $12 was the regular weekly wage the payment of compensation at the rate of $6 per week was in accordance with the provisions of workmen's compensation act.

The approval of the settlement between the employee and the employer and insurance carrier, with a provision that "If any party in interest doubts that the agreement made has been made strictly according to law he may address the department with an inquiry or complaint. It will receive prompt attention," was not such a final award as would necessarily deprive the Industrial Board of jurisdiction to allow the case to be reopened. *Lumbermen's Mutual Casualty Co.* v. *Lattimore,* 165 *Ga.* 501 (141 S. E. 195). See also *U. S. Casualty Co.* v. *Smith,* 162 *Ga.* 130, 134 (133 S. E. 851). Within what specific time the right of the claimant to have his case reopened would be barred does not seem to have been decided in this State. In *Reese* v. *American Mutual Liability Insurance Co.,* 67 *Ga. App.* 420 (20 S. E. 2d, 773), this court held that where the Industrial Board approved a settlement between an employee and the employer and the insurance carrier with a provision similar to that above mentioned the case might be reopened within a "reasonable time." To render a new award

would necessarily involve the setting aside of the original award, and it may be that by analogy to the time in which a motion to set aside an ordinary judgment must be made, which by Code § 3-702 must be within three years from the rendition of the judgment, the jurisdiction of the Industrial Board to entertain a motion such as here involved would be lost, as contended by the plaintiffs in error, where, as here, the request of the claimant that the case be reopened was not made until more than five years after the original award. However, we do not now decide that question, preferring to plant our decision on the merits of the case which, in our opinion, require a reversal of the judgment of the superior court for reasons hereinafter to be shown.

The Code, § 114-402, declares in part: "The compensation of an injured person shall be computed on the basis of the regular wage received by the employee on the date of the accident." The meaning of the word "regular" is, according to Funk & Wagnall's New Standard Dictionary and Webster's New International Dictionary, "according to rule" or "formed after a uniform type." What was the "regular wage" of the employee at the time of his injury? It appears from the record that the employer had a contract with the State Highway Department of Georgia for the construction of a bridge over the Oconee River and highway approaches thereto, such construction work inferentially being aided by the United States Government because it is recited in the contract awarded to the employer that the work was to be done "in accordance with the rules and regulations made pursuant to that certain act of the Federal Congress entitled 'An act to provide that the United States shall aid the States in the construction of rural post roads and for other purposes,' approved July 11, 1916, and amendments subsequent thereto." See 39 Stat. 358; 16 U. S. C. A. 348, § 503. There was in effect at the time the contract was let to the employer a Federal act known as the "National Industrial Recovery Act" of 1933 (48 Stat. 195; Cumulative Annual Pocket Part, 40 U. S. C. A. §§ 401-414), certain provisions of which were on May 27, 1935, declared by the Supreme Court of the United States to be unconstitutional. See Schecter Cor. v. United States, 295 U. S. 495 (55 Sup. Ct. 837, 79 L. ed. 1570, 97 A. L. R. 947). This act provided "that (except in executive, administrative, and supervisory positions), so far as practicable and

feasible, no individual directly employed on any such project [construction project] shall be permitted to work more than thirty hours in any one week."

In letting the construction project, upon which the claimant Morris was subsequently employed, the State Highway Department of Georgia included in the contract with the employer a provision in conformity with that of the Federal act as to the maximum number of hours of work in any one week, and it appears from the proposal used in connection with the contract entered into by the employer that the labor to be used on the project was to be selected from qualified workers certified by an employment agency at Milledgeville, Georgia, which had been officially designated by the United States Government. It is inferable that the employer engaged the claimant Morris, using the services of such employment agency, to work as a carpenter on the works project in question. He began on Thursday, and in the calendar week worked also Friday and Saturday. In the meantime another shift, A, had worked Monday, Tuesday and Wednesday of the same week. Morris worked with shift B again on Monday, Tuesday and Wednesday of the following calendar week, shift A working Thursday, Friday and Saturday of that week. At the end of two calendar weeks each man on the shifts, which we have arbitrarily designated A and B, was paid for 60 hours of work. Morris thus received for 60 hours at 40 cents per hour the sum of $24, working as contemplated by the conditions of the contract entered into by the State Highway Department as a Federal aid project. The contract did not provide how many days per week should be worked by each employee, stipulating only that each employee should not work more than thirty hours per week. Manifestly there would have been a compliance with the Governmental provisions if the employee had worked six days at five hours a day, five days at six hours a day, four days at seven and one-half hours a day or three days at ten hours a day, but for convenience, as stated, the practice was to divide the thirty hours into three periods of ten hours each, the employee having the right to make up any time lost, but not to work more than thirty hours in each calendar week.

While it does not appear that in engaging Morris the employer specifically made known to him that he was to work according to the Governmental regulations, his testimony, quoted in detail

hereinbefore, conclusively shows that he understood the nature of the project and the work regulations which arose out of the Federal aid in connection with it, and he knew that he could, in no case, work more than thirty hours in any one week, and that to increase his earnings he would be obliged to work additional hours at some other employment. He contends, however, that as he worked six continuous days, omitting the intervening Sunday, and then was laid off for an interval of three days, and then again worked six days, and as six days usually constitute a working week and he earned for such time a total of $24, that sum should be taken as the basis for his allowance of compensation, which under Code § 114-404 would be one half of that amount, or $12, and that as he was originally allowed only $6 per week he is entitled to an additional $6 per week. This view the superior court evidently entertained in reversing the award of the full board and remanding the case with direction that the award be modified by changing the amount of weekly compensation to $12 per week. We think, for reasons above shown, that he erred in so doing, and that the award of $6 per week was a full compliance with the provisions of the workmen's compensation act. The employee was not working on a daily wage basis, from which it might be argued that his weekly or regular wage should be figured at six times a daily wage to ascertain the total weekly wage, but he was working on a *fixed* basis of thirty hours a week at 40 cents an hour. Thus at the time of his injury his fixed regular wage was $12 per week, rendering unnecessary any mathematical calculation on an assumed basis of a regular day wage as was done in *Carter* v. *Ocean Accident &c. Corporation,* 190 *Ga.* 857 (11 S. E. 2d, 16), cited and strongly relied on by the defendant in error. As said in that case, "If a regular wage has been established and the employee is receiving it on the date of the accident, then that, and no other, is the basis on which compensation must be computed."

In *Googe* v. *United States Fidelity &c. Co.,* 63 *Ga. App.* 678 (11 S. E. 2d, 803), where an employee worked forty hours per week at 75 cents an hour, it was held that his regular weekly wage was $30. He was ready at all times to put in as much as forty hours labor per week, but on account of weather conditions or lack of materials was not allowed to work the full number of hours, and for about eleven months previously to his injury he made average weekly

earnings of only $19.03. Under a claim for compensation he was allowed only one half of this amount, or $9.515 per week. This court held that the superior court erred in sustaining the award of the Industrial Board in finding that the claimant was entitled to only that amount, and ruled that his compensation should have been based on the amount he potentially could earn, that is, $30, as it was theoretically possible for him to work under his contract for forty hours at 75 cents per hour. It can readily be seen that if he had earned 40 cents per hour for a possible thirty hours, as in the present case, his regular weekly wage would have been found to be $12, and the ruling of this court would have been that he was entitled to only one half of $12, or $6, as weekly compensation.

*Georgia Power Co.* v. *McCook,* 48 *Ga. App.* 138 (172 S. E. 78), is not authority for holding that the claimant in the present case is entitled to more than $6 weekly compensation. In that case the employee had a regular fixed weekly wage of $32.80. He worked two weeks, then was laid off for two weeks, and then returned for two more weeks work. The employer claimed that his earnings should have been averaged, but this court, of course, held that the fixed regular weekly wage of $32.80 was the proper basis of calculation. Cases in other jurisdictions which support the ruling we have made are: Durrett *v.* Unemployment Relief Committee (La. App.) 152 So. 138; Barr *v.* United Gas Public Service Co., 183 La. 873 (165 So. 129) ; Dawson *v.* Barber Contracting Co. (La. App.), 195 So. 46; Mayon *v.* Jahncke Service Inc. (La. App.), 177 So. 399; Drum *v.* Omaha Steel Works, 129 Neb. 273 (261 N. W. 351) ; Micek *v.* Omaha Steel Works, 135 Neb. 843 (282 N. W. 262).

Reverting to *Carter* v. *Ocean Accident &c. Cor.,* supra, it will be noted that the employee did *piece work* and *averaged* about $5 per day. For a period of ten months before his injury he had worked only three days per week, but his employment *did not bar him from working six days per week.* The Supreme Court, not having before it any fixed regular weekly wage, as indisputably appears in the present case, treated the evidence as showing that the employee earned $5 on the date of his injury, and that this was the amount regularly received per day during the preceding ten months. Using such a basis it held that the weekly wage was

six times that amount, or $30 per week, and not $15 as ruled by the Court of Appeals in the same case reported in 62 *Ga. App.* 188 (8 S. E. 2d, 538). This ruling of the Supreme Court does not require a holding here that the claimant's regular weekly wage was $24, it being *fixed* at $12 per week, because he could not hope to work more than thirty hours in any one week and his daily hour rate was 40 cents, and, as said by that court, "If a regular wage has been established and the employee is receiving it on the date of the accident, then that, and no other, is the basis on which compensation must be computed." It was further said in the opinion: "Under the statute authority is given to consider the past only in so far as it reveals *a regular earning capacity*. We think the fairest yardstick by which his compensation to cover his injury can be measured is what *he was able to earn* and was actually earning when the misfortune came upon him. . . Although this claimant was able to procure employment for only three days per week at the time of the accident, *there was nothing in the employment contract or otherwise to limit his future to three days employment per week. As shown in this case, during his incapacity he was deprived of at least four days employment per week with the same employer.*" (Italics ours.) It is shown that in that case the employee had an actual earning experience of three days per week, but had a potential earning capacity of six days per week because his employment did not limit it. But where an employee, as in the present case, can not increase his labor to more than a total of thirty hours per week, an injury can not reasonably be said to deprive him of earning more than $12 per week when his rate of pay is 40 cents an hour. The compensation to which the claimant was entitled was, therefore, one half of that amount, or $6 per week, as ruled by the Industrial Board, and the superior court erred in reversing the award and remanding the case with direction that the award be modified to $12 per week.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*