# In re Grievance of the Vermont State Colleges Faculty Federation, AFT Local #3180, AFL–CIO

[415 A.2d 226]

No. 291-78

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Costes, District Judge, Specially Assigned

Opinion Filed April 15, 1980

*Hoff, Wilson & Jenkins, P.C.,* Burlington, for Plaintiff.

*Matthew I. Katz* of *Latham, Eastman, Schweyer & Tetzlaff,* Burlington, and *Peter R. Hicks* of *Morgan, Brown, Kearns & Joy,* Boston, Massachusetts, for Defendant.

**Barney, C.J.** The issue on this appeal is whether a Castleton College art instructor, William T. Ramage, was a full-time or part-time faculty member during the spring semester of 1978.

During the preceding fall, the College, by letter, offered Ramage a part-time position teaching three three-credit courses for a specified salary. He accepted. Subsequently, the College asked him to teach an additional course for additional compensation. He accepted this offer as well.

During the semester, the Faculty Federation filed a grievance alleging, in substance, that the Vermont State Colleges had violated its collective bargaining agreement with the Federation by treating Ramage as a part-time faculty member. The grievance was denied both at the level of the Dean for Academic Affairs and at the level of the President of the College. The Federation pursued the grievance before the State Labor Relations Board. There, by stipulation, the issue was framed in terms of whether Ramage was a full-time faculty member and therefore a member of the bargaining unit.

After a hearing, the Labor Board issued its findings of fact, opinion and order. It determined, citing 3 V.S.A. § 926, that the Federation, as the collective bargaining unit, had the authority to pursue the grievance without Ramage's authorization. This issue is not contested in this Court. It found as a fact that the normal full-time course load at Castleton is 24 credit hours per year. It further found that full-time faculty members are expected to maintain reasonable office hours, to act as advisors to assigned students, to participate in co-curricular activities, and to participate in the Faculty Assembly and in assigned committees thereof. Finally, the Board found that Ramage in fact taught 12 credit hours plus a three credit independent study course during the spring semester, but that he did not keep office hours, have advisees, or participate in co-curricular or Faculty Assembly activities.

Over the dissent of its chairman, the Board discounted the importance of the more subjective indicators and concluded that under the collective bargaining agreement the number of credit hours taught is the determinative indicator of a faculty member's full-time or part-time status. It declared that for the semester Ramage was a full-time faculty member and a member of the bargaining unit. In consequence, it ordered that Ramage receive compensation and fringe benefits for one semester's full-time employment.

■ We note that the construction of a collective bargaining agreement is a matter within the presumed expertise of the Labor Board, *Moore* v. *Sunbeam Corp.*, 459 F.2d 811, 817 (7th Cir. 1972) (N.L.R.B.), and therefore we accord its determination substantial deference on this appeal. *In re Young*, 134 Vt. 569, 367 A.2d 665 (1976).

Pursuant to the collective bargaining agreement at issue, the Federation is recognized as the exclusive bargaining agent "for all full-time teaching faculty and ranked librarians employed by the Colleges" with certain specific, nonapplicable exceptions. The term "full-time" is not defined, and "faculty member" and "faculty" are defined in terms which are unfortunately circular, that is, as members of the bargaining unit. The agreement further reserves all rights not provided for to the Vermont State Colleges.

■ It is possible to construe the agreement as reserving to the Colleges the right to invoke or waive its terms when hiring faculty by the unilateral classification of new appointments as full-time or part-time. We do not believe that, read in its entirety and within the context of labor relations, the contract requires such a formalistic result. The agreement, in recognizing the Federation as the exclusive bargaining agent for all full-time faculty, follows the Labor Board's certification of the bargaining unit as comprised of full-time faculty. The considerations underlying a Labor Board certification of a bargaining unit are practical concerns—*e.g.*, the utility of the unit in assuring to the employees the fullest freedom in exercising their collective bargaining rights, the current extent of employee organization, and the avoidance of unit overfragmentation. 3 V.S.A. § 927. See *International Association of Firefighters, Local #2287* v. *City of Montpelier*, 133 Vt. 175, 332 A.2d 795 (1975); *In re Liquor Control Department Non-supervisory Employees*, 135 Vt. 623, 383 A.2d 612 (1978). We think it fair to infer that in this respect the agreement, like the certification, is aimed at practical not technical concerns, and that therefore membership in the bargaining unit should depend on an individual's actual status as full- or part-time, not on the College's unilateral classification of that status.

■ The Labor Board apparently took this view of the case by in fact looking to Ramage's actual work obligation

rather than the label the College gave to his employment. The determination necessarily requires a comparison, within the context of the workplace, of Ramage's obligations with the obligations of those who are recognized as full-time faculty members. See *G. H. Bass & Co.* v. *Maine Employment Security Commission,* 250 A.2d 492, 496 (Me. 1969); *Cote* v. *Bachelder-Worcester Co.,* 85 N.H. 444, 447, 160 A. 101, 102 (1932). This is the relevance of the Board's findings relating to the duties of full-time faculty and to Ramage's duties. Its conclusion that Ramage was a full-time faculty member emphasizes the importance of his course assignments almost to the exclusion of any other considerations. The concern of the dissenting chairman of the Board with measuring "status solely by the number of credit hours taught" does have some validity, but actual teaching load is a critical factor in determining a teacher's full-time or part-time status. See *Campbell* v. *Graham-Armstrong,* 9 Cal. 3d 482, 487–89, 509 P.2d 689, 692–93, 107 Cal. Rptr. 777, 780–81 (1973); *Lopez* v. *Vance,* 509 S.W.2d 197, 203–04 (Mo. App. 1974). In these circumstances, we are not prepared to reject the Labor Board's assessment of the importance of this factor as balanced against the absence of other indicators in its determination that Ramage was a de facto full-time member of the faculty.

The appellant Colleges also contest the basis of the Board's conclusion that 12 credit hours represents a normal full-time teaching load in a given semester. They point to the fact that this conclusion is apparently drawn from a provision of the collective bargaining agreement which provides that the parties will strive toward a normal course workload of 24 credit hours per year. Since the time period in question is one-half of the academic year contemplated by the agreement, it does not seem that the Board drew an unreasonable inference in determining that the normal, though not invariable, semester course load is one-half that provided for in the agreement.

*Affirmed.*