## Kathleen Kelley v. The Day Care Center, Inc.

[451 A.2d 1106]

No. 381-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed September 7, 1982

610

*James M. Libby, Jr.,* Vermont Legal Aid, Inc., Montpelier, for Plaintiff-Appellee.

*Mahady, Johnson, Dunne, Hershenson & Scott,* Norwich, for Defendant-Appellant.

**Underwood, J.** The defendant, Day Care Center, Inc. (Center), a charitable corporation, appeals on order of the Vermont Labor Relations Board. The Board found the Center committed unfair labor practices by firing a teacher, plaintiff Kathleen Kelley, for her activist role in leading the Center's staff in a labor dispute, and ordered the Center to reinstate her, and pay to her a portion of the money she would have earned but for the Center's illegal action.

The Center's appeal presents three claims of error: (1) that the Board had no jurisdiction over the Center because it is a charitable corporation; (2) that the Board's findings

are not supported by the record; and (3) that the two-year delay between the Board's hearing in this matter and the release of its order render the order invalid. The plaintiff, in a cross-appeal, claims that the Board erred by refusing to include pay raises she would have received but for her illegal firing. We affirm as to the first three issues, and reverse as to the fourth, and accordingly, remand for computation of additional back pay.

We address the issues in the order laid out above.

## I.

The Center's first claim of error is that the Board lacked jurisdiction over it, and consequently was without power to issue the order appealed from. The Center's argument notes first that the Act does not specifically include charitable organizations, and then cites us to three cases from other jurisdictions, decided in the 1940's, which construe vastly different statutes. The Supreme Judicial Court of Massachusetts, in *St. Luke's Hospital* v. *Labor Relations Commission*, 320 Mass. 467, 70 N.E.2d 10 (1946), held that a state labor relations board had no jurisdiction over a hospital which acted as a charitable institution where the legislature had explicitly stated that its purpose in passing the underlying statute was to eliminate such labor unrest as interfered with industry and trade. The Pennsylvania Supreme Court has reached similar results, holding in *Western Pennsylvania Hospital* v. *Lichliter*, 340 Pa. 382, 17 A.2d 206 (1941), and in *Petition of Salvation Army*, 349 Pa. 105, 36 A.2d 479 (1944), that the employers there involved were charitable institutions and thus outside the purview of a statute designed to reduce labor unrest in industry.

Without conceding that any of the three is correct in light of attitudes prevailing today, we note simply that they are not consistent with the purposes or structure of our statute. The Vermont legislature stated that its "purpose and policy" in enacting the Vermont State Labor Relations Act was

to prescribe the legitimate rights of both employees and employers in their relations with each other, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other,

to protect the rights of individual employees in their relations with labor organizations, to define and proscribe practices on the part of labor and management which are harmful to the general welfare, and to protect the rights of the public in connection with labor disputes.

21 V.S.A. § 1501 (b).

It is thus clear that the Vermont statute was designed to regulate the relationship between employers and employees, rather than merely to promote the well-being of a particular segment of the economy. Accordingly, we focus on whether our statutes bring the parties here involved within the jurisdiction of the Board, rather than on the nature of the goods and services they provide.

Unfair labor practices are defined at 21 V.S.A. § 1621. The Board found that the Center violated the following portions of that statute when it fired the plaintiff:

> (a) It shall be an unfair labor practice for an employer:
>
> (1) To interfere with, restrain or coerce employees in the exercise of their rights guaranteed in section 1503 of this title.
>
> . . . .
>
> (3) By discrimination in regard to hire and tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

"Employer" is defined by the State Labor Relations Act as "any person employing five or more employees and any person acting as an agent of an employer, employing five or more employees . . . ." 21 V.S.A. § 1502 (7). "Person" is defined to include corporations. 21 V.S.A. § 1502 (10). The uncontested finding of the Board is that the Center is a nonprofit corporation. "Nonprofit corporation" is defined by 11 V.S.A. § 2302 (3) as "a corporation no part of the income or profit of which is distributable to its members, directors or officers." The Center is indisputably a corporation, and thus plainly within the definition of an employer. Moreover, it is clear that the legislature in defining an employer intended to include most nonprofit corporations within that

definition, because two particular kinds of nonprofit corporations, hospitals and nursing homes, are specifically excluded from it. 21 V.S.A. § 1502(7) (E). The necessary implication of this fact is that all other nonprofit corporations are subject to the jurisdiction of the Board, and we so hold.

## II.

The Center next challenges the Board's conclusion that the dismissal of the plaintiff constituted an unfair labor practice. The Center argues here, as it did to the Board, that the discharge was motivated solely by certain inadequacies in the plaintiff's job performance which warranted dismissal in the ordinary course of the conduct of its business. Since discharges motivated solely by valid business considerations do not constitute an unfair labor practice, *In re Southwestern Vermont Education Association*, 136 Vt. 490, 494, 396 A.2d 123 (1978), the employer's motive for a discharge becomes a crucial issue when the firing is challenged by the employee. *Ohland* v. *Dubay*, 133 Vt. 300, 301, 336 A.2d 203, 205 (1975). Because of the difficulty in proving that illegal considerations figure in the employer's subjective motivation, "we have . . . approved the practice of inferring unlawful motivation from attending circumstances." *In re Southwestern Vermont Education Association, supra,* 136 Vt. at 494, 396 A.2d at 125. Among the circumstances which will permit such an inference are the employer's knowledge of the employee's labor activity, evidence that it fostered a climate of coercion, and suspicious timing of the discharge. *Ohland* v. *Dubay, supra,* 133 Vt. at 302–03, 336 A.2d at 205.

Here, the Board concluded

> that the Center knew of [plaintiff's] role in the labor dispute, that the Center had fostered a climate of coercion at the work site and that Kelley's discharge, four days before . . . harsher working conditions were to be imposed was suspiciously timed. . . .

Accordingly, the Board held that the plaintiff had sustained her burden of proof. The Center argues that some of the findings by the Board which establish the factual basis necessary to support the inference of improper motive are

not supported by the evidence. The Center first attacks the Board's "finding" that the Center violated 21 V.S.A. § 1504, which requires employers to make reasonable efforts to (a) enter into and maintain labor agreements, and (b) expeditiously settle labor disputes. These findings, so-called, are really conclusions of law based upon the factual circumstances. Whether or not findings as to the factual context of the plaintiff's discharge also demonstrate that the employer violated 21 V.S.A. § 1504 is superfluous to the issue of whether her discharge constituted unfair labor practices. Accordingly, we find it unnecessary to determine whether the record supports the conclusion that the Center violated 21 V.S.A. § 1504.

The Center next argues that the record does not support the findings from which the Board drew the inference of improper motive. The Center concedes that the plaintiff's views on Center-staff relations were well known and acknowledges the proximity of her discharge to implementation of unilateral changes in employee contracts which spawned her views. It argues, however, that the evidence does not support the Board's findings underlying its conclusion that the Center fostered an illegal climate of coercion, and thus contends the holding that the plaintiff's discharge was motivated by illegal considerations must fall.

Our review of the record, however, discloses ample support for the challenged findings. Moreover, even assuming that the challenged findings are invalid, those remaining are more than adequate to support the conclusion that the discharge took place in a climate of coercion.

■ Finally, the Board specifically found that the Center director "admitted . . . that, his stated reasons aside, he would have dismissed Kelley for her role in the labor dispute." This unchallenged finding is an admission by the employer of illegal motivation, and eliminates the need to infer improper motive from the surrounding circumstances, thus providing direct support for the Board's order.

### III.

■ The Center next argues that the Board's rulings should be vacated and a new hearing scheduled because of

the two-year delay between the Board's hearings in this case and the issuance of the order of the Board as it was then constituted. As noted above, the findings fairly establish that the plaintiff was the victim of illegal conduct by the Center. Reversal and remand would only aggravate her injuries. The Board's delay alone, while deplorable, is insufficient cause to overturn these proceedings. See *Bagel Bakers Council* v. *NLRB*, 555 F.2d 304, 306 (2d Cir. 1977) (Where the Board was responsible for delay, "we can see no reason to shift its cost from the employers to the employees harmed by the illegal conduct."); *NLRB* v. *J. H. Rutter-Rex Manufacturing Co.*, 396 U.S. 258 (1969).

## IV.

The plaintiff's cross-appeal claims that the Board erred by refusing to include in its computations of the back pay due her the raises she would have received had she not been illegally discharged by the Center. The Board gave its reason for this action:

> The Board has taken into account the delay in rendering this opinion and the fact that this delay has penalized the interests of both sides through no fault of their own. For this reason we decline to take into account any raises the [plaintiff] may have received from the Center since her dismissal.

Vermont law requires the Board, upon concluding that a person has committed an unfair labor practice, to issue an order requiring such person "to take such affirmative action as will carry out the policies of this act." 21 V.S.A. § 1622 (d). Among the explicit purposes of the Act are to give employees, such as the plaintiff, the right "to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection," 21 V.S.A. § 1503, and to protect that right from infringement by an employer. 21 V.S.A. § 1501 (b). The Board found that the Center violated these policies by firing the plaintiff "for her leadership of the staff during the labor dispute."

"'A back pay order is a reparation order designed to vindicate the public policy [behind our Labor Relations

Act] by making the employees whole for losses suffered on account of an unfair labor practice.' " *NLRB* v. *J. H. Rutter-Rex Manufacturing Co., supra*, 396 U.S. at 263 (quoting *Nathanson* v. *NLRB*, 344 U.S. 25, 27 (1952)). Lengthy delays by the Board " 'render the back pay award a wholly inadequate and unsatisfactory remedy' " when considered in light of " 'the economic hardship caused by [two] years of undeservedly substandard earnings.' " *Id.* at 264 (quoting *NLRB* v. *Mastro Plastics Corp.*, 354 F.2d 170, 180 (2d Cir. 1965)).

 The Board's decision here to shift the cost of its delay from the wrongdoer to the wronged not only does not "carry out the policies of this act," 21 V.S.A. § 1622(d), but thwarts those policies by failing to make whole one injured by practices proscribed by the Act. Accordingly, we remand for a determination of whether and how much the plaintiff would have received in pay increases but for the illegal discharge by the Center, taking into account any income she may have received from other sources during the interim.

*The judgment and the order awarding back pay are affirmed; the cause is remanded for determination of whether and how much the plaintiff is entitled to in additional back pay by virtue of pay increases she would have received but for the Center's illegal conduct.*