# Vermont State Colleges Faculty Federation v. Vermont State Colleges

[547 A.2d 1340]

No. 85-515

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed April 29, 1988

*Michael T. Schein* of *Hoff, Wilson, Powell & Lang, P.C.*, Burlington, for Plaintiff-Appellee.

*Sutherland Associates, Inc.*, Burlington, for Defendant-Appellant.

**Peck, J.** The Vermont State Colleges (VSC) appeals an opinion and order of the Vermont Labor Relations Board (Board) which concluded that the Vermont Technical College president committed an unfair labor practice in violation of 3 V.S.A. § 961(5) by unilaterally issuing workload guidelines. We affirm.

Since 1974, successive collective bargaining agreements have been negotiated between the VSC administration and the Vermont State Colleges Faculty Federation (Federation). The collective bargaining agreement (agreement) in effect at the time of the Board's action contains a workload provision, Article 23, as follows in pertinent part:

> The Federation and Colleges agree to strive towards a normal individual workload of 24 credit hours or its equivalent per year and to observe that norm in the appointment of new faculty. For the duration of this Agreement, however, faculty shall not be required to teach an excessive number of contact hours, assume an excessive student load, or be assigned an unreasonable schedule. In determining what is "excessive" or "unreasonable" under this paragraph, current practices in the Colleges shall be one of the important elements to be considered. The number of courses and number of different course preparations per faculty member shall remain at the normal and customary number for that department.

In July of 1984, the president of Vermont Technical College reviewed the faculty schedule and determined that faculty workloads appeared inequitable. Consequently, he formed an ad hoc committee of faculty and charged it to come up with recommendations on workload. The committee had no federation status, and the committee did not conduct a study to determine current and past practices at Vermont Technical College. It presented a report to the president in October of 1984, and in December of 1984 the president issued workload guidelines, incorporating some of the committee's recommendations and setting requirements as to the faculty "contact hours," "credit hours" and "student load."* The guidelines were then utilized for scheduling purposes beginning spring semester of 1985.

---

* Contact hours are defined in the guidelines as the number of hours a week a faculty member is assigned to be in a classroom or laboratory with students.

An analysis of course lists for the years 1982 to 1984 indicated that the president's guidelines caused an increase in workload for some Vermont Technical College departments. The Board found that the evidence suggested that student loads were increased to an excessive extent; in some cases resulting in instructors teaching an additional lecture course without compensation, and resulting in cases where faculty were no longer given "overload" pay for carrying a contact hour load in excess of what was customary in a particular department. Consequently, the Board concluded that the guidelines constituted an excessive change in conditions of employment from that which previously existed, in violation of Article 23 of the collective bargaining agreement.

The Board held that the president committed an unfair labor practice in violation of 3 V.S.A. § 961(5) by unilaterally issuing the workload guidelines. It then ordered Vermont Technical College to rescind the guidelines and negotiate any proposed changes regarding faculty workload with the Federation. It is from this order that VSC appeals. The Federation cross-appeals the Board's decision not to award back pay.

Appellant claims that the Board erred on three bases: (1) by finding that the collective bargaining agreement is ambiguous in that it provides two different standards for workload analysis; (2) by concluding that Article 23 precludes possible workload changes within parameters existing in this provision, and (3) by concluding that the guidelines give the academic dean more authority with respect to assignment of workload than he has under the collective bargaining agreement.

## I.

■ Appellant argues first that Article 23 of the collective bargaining agreement is not ambiguous, but clearly requires that workload be measured by past practices on a college-wide basis, rather than a departmental basis. The Board, however, found Article 23 to be unclear, noting that it refers both to current practices in the "colleges" and the norms and customs within the departments. In addition, "[c]olleges" is defined in the agreement as "all of the campus member colleges of V.S.C." The use of the

---

Credit hours are defined as the credits awarded a student for a particular course. Student load refers to the total number of students in a given semester or year assigned to an instructor.

word "colleges" in Article 23 does not necessarily support appellant's contention that workload be measured by past practice on the technical college-wide level. Rather, it is unclear whether this language indicates that a VSC system-wide average should be used, or whether "current practices in the [c]olleges" refers to what goes on in each department at each college.

"[C]onstruction of a collective bargaining agreement is a matter within the presumed expertise of the Labor Board . . . ." *In re Vermont State Colleges Faculty Federation*, 138 Vt. 299, 301, 415 A.2d 226, 227 (1980). This Court will accord its determination substantial deference on appeal.

Article 23 is subject to a variety of interpretations. The Board did not abuse its discretion by determining that the agreement is ambiguous because it provides for two different standards for determining workload practices. Appellant has failed to demonstrate that the Board's construction of the agreement is clearly erroneous; therefore, we defer to the Board's construction and find no error. *In re Carlson*, 140 Vt. 555, 560, 442 A.2d 57, 60 (1982).

## II.

The Board, in its order, required the VSC to rescind the Vermont Technical College workload guidelines and negotiate any proposed changes regarding faculty workload with the Federation. Appellant argues that this order is overbroad in that it fails to account for the fact that some changes in present workload patterns are permissible under Article 23, and that as such, are proper management prerogatives. We do not agree that the Board's order limits the power given to the college administration to adjust workloads within the parameters allowed by Article 23.

Under the State Employees Labor Relations Act (SELRA), it is an unfair labor practice for an employer to refuse to bargain collectively with the employees' representative on terms, tenure or conditions of employment. 3 V.S.A. §§ 902(2), 961(5). Absent a waiver by either the terms of the contract or by actual negotiations, and except for matters prescribed or controlled by statute, the employer "has a duty to bargain changes in mandatory bargaining subjects during the term of an agreement." *Vermont State Employees' Association* v. *State of Vermont*, 5 VLRB 303, 326 (1982); see 3 V.S.A. § 904(a).

We note that the Board's order does not prevent the Vermont Technical College from exercising its rights under the agreement, since to do so will not result in a unilateral change requiring negotiation. However, when the college wishes to go beyond the agreement and change the workload rules, the duty to bargain is triggered. We find that it was well within the Board's discretion to order appellant to bargain any proposed workload changes. See 3 V.S.A. §§ 904(a), 965(d); *Vermont State Colleges Faculty Federation* v. *Vermont State Colleges*, 138 Vt. 451, 457, 418 A.2d 34, 38 (1980).

## III.

Appellant next asserts that the Board improperly found that the president's guidelines gave the academic dean more authority with respect to workload than he or she has under the agreement. Paragraph 7 of the guidelines states that "[t]he Academic Dean, in consultation with the Department Chair and the faculty member(s), may raise or lower class size for a specific course in any given semester." Appellant asserts that the guidelines should have been construed to be consistent with the collective bargaining agreement, and argues that this guideline is consistent with Section D of Article 7 of the agreement, which says:

> If there is a disagreement [as to class size], the faculty member and the Dean or appropriate administrative official shall discuss the maximum number of students allowed to register in each course before decision by said Dean or other designated official. This said maximum number shall be established within the provisions of Article 23, workload.

The Board, however, found that the guidelines do in fact give the dean more authority than does the contract. It noted that the contract permits the dean to make a decision on maximum class size which must be within the provisions of Article 23, but that the guidelines make no reference to Article 23, implying that the dean is not so limited. We note that the above omission in paragraph 7, taken within the context of the guidelines as a whole, amply supports the Board's conclusion that the guidelines give the dean more authority than the contract.

## IV.

■ On the cross-appeal, appellee argues that the Board erred by failing to award back pay. It argues that " '[a] back pay order is a reparation order designed to vindicate the public policy [behind our Labor Relations Act] by making the employees whole for losses suffered on account of an unfair labor practice.' " *Kelley* v. *Day Care Center, Inc.*, 141 Vt. 608, 615-16, 451 A.2d 1106, 1110 (1982) (quoting *NLRB* v. *J. H. Rutter-Rex Manufacturing Co.*, 396 U.S. 258, 263 (1969)).

The Board, in its conclusions, stated that it was exercising its discretion in declining to order back pay because of the imprecise nature of calculating workload back pay and the flexibility in Article 23 for determining workload. See 3 V.S.A. § 965(d). It concluded that the best and most complete remedy was simply to order the parties to negotiate workload issues, noting that back pay may be a part of the negotiations. Reviewing the record, we do not find that the Board abused the power given it by the Legislature to fashion a suitable remedy for an unfair labor practice. See 3 V.S.A. § 965(d); *Firefighters of Brattleboro* v. *Brattleboro Fire Department*, 138 Vt. 347, 350, 415 A.2d 243, 245 (1980).

*Affirmed.*