# VERMONT STATE COLLEGES STAFF FEDERATION, AFL LOCAL 4023, AFL–CIO v. VERMONT STATE COLLEGES

[596 A.2d 355]

No. 89-495

July 12, 1991. Respondent Vermont State Colleges (VSC) appeals the order of the Vermont Labor Relations Board (Board) sustaining the grievance of the Vermont State Colleges Staff Federation (Federation) and ruling that VSC violated the collective bargaining agreement (contract) between VSC and the Federation.

The violation was that VSC allowed a Johnson State College Library Technical Assistant (LTA II) to perform certain audio-visual duties normally assigned to an LTA III without giving the Federation notice and an opportunity to bargain over the change.

VSC first argues that the Board erred in failing to dismiss the grievance as untimely filed. The contract requires a grievance to be filed within 30 days after "the time at which the grievant(s) could have reasonably been aware of the existence of the situation created by the Colleges which is the basis for the grievance." Although the employee involved knew about the situation giving rise to the grievance early in 1988, the Federation first became aware that the employee had assumed the LTA III duties on October 6, 1988 and filed its grievance on October 28, 1988. The Board rejected VSC's claims that an earlier letter had put the Federation on notice that LTA III duties had been assigned and that the knowledge of the situation by other Federation members could be imputed to the Federation. We must uphold the Board's findings of fact unless they are clearly erroneous and sustain the Board's order if supported by its own findings. *In re Merrill*, 151 Vt. 270, 273, 559 A.2d 651, 653 (1988). We conclude that the Board's findings and conclusions are supported on this issue. Since the Federation is the grievant and the claim involves its right to notice, the knowledge of specific employees is not determinative. The Board could conclude that the Federation was unaware of the LTA III work assignment until October of 1988.

On the merits, VSC makes a series of challenges to the Board's conclusion that it violated Article 3, § 2 of the contract, which provides that management may "change [an employee's] job content" only after it gives "the Federation notice and an opportunity to bargain." First, VSC asserts that any change in the employee's job content was insufficient to trigger Article 3 because the added audio-visual tasks were "minimal." The issue comes down to an interpretation of the collective bargaining agreement. We give "substantial deference" to the Board's expertise in construing the collective bargaining agreement, *In re Carlson*, 140 Vt. 555, 560, 442 A.2d 57, 60 (1982), and apply traditional principles of contract law. See *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 151 Vt. 457, 461, 561 A.2d 417, 420 (1989). Where contract language is clear, the parties are presumed to be bound by its plain and ordinary meaning. See *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 141 Vt. 138, 143–44, 446 A.2d 347, 349–50 (1982). Nowhere does the contract limit the phrase, "change job content," to mean a change comprising a majority, or even a substantial percentage, of an employee's overall duties. The record supports the Board's finding that these duties were beyond the LTA II job description and comprised 5–20% of the employee's job content.

VSC next argues that because the employee assumed the duties voluntarily, Article 27 of the contract, dealing with voluntary assumption of duties, controls the case. That Article establishes certain options when an employee voluntarily assumes duties of a higher rated position and does not require notice to the Federation. In construing the contract, we must give effect to every material part, if possible. *Id.* at 143, 446 A.2d at 349. We can construe Articles 3 and 27 together. When we do, we conclude that the Article 3 obligation of manage-

ment to notify the Federation of a change in an employee's job content applies whether or not the change is subject to the options in Article 27. In any event, the Board could conclude that the assumption of the LTA III duties in this case were not entirely voluntary, in view of the staff shortage at the library and the encouragement given by the employee's supervisor.

We agree with the Board's conclusion that VSC's eventual compliance with Article 27 does not resolve this grievance. VSC failed to give the Federation notice as required by Article 3. As the Board concluded, the sole effect of withdrawing the duties from the employee, an option specified in Article 27, was to limit VSC's liability for damages.

Finally, VSC challenges the award of damages to the employee. The Board has broad authority to fashion a suitable remedy, and its judgment will be upheld absent an abuse of discretion. See *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 149 Vt. 546, 551, 547 A.2d 1340, 1344 (1988). Although we agree with the Board that some back pay is warranted, we are unable to conclude that the amount awarded is supported by the record. First, the $1970 award was based on the difference between the annual salaries for an LTA II and an LTA III, reduced by the number of months during which the employee did not perform the audio-visual duties. The Board's own findings, however, were that these duties comprised no more than 5–20% of her job content. A back pay award should ordinarily be fashioned to reflect the aggrieved party's actual damages. See *Kelley v. Day Care Center, Inc.*, 141 Vt. 608, 615–16, 451 A.2d 1106, 1110 (1982). The present award goes far beyond making the employee whole. Further, under the

particular circumstances of this case, an award based on the full salary differential is plainly inequitable. The employee neglected to bring a grievance on her own behalf or inform the Federation of the change in her position. While the Federation was entitled to bring this grievance to enforce VSC's contractual duties, we agree with the concurring opinion of one Board member: "[T]o make the employee whole for the LTA III work that she did, she should only receive 20 percent of the salary difference between the LTA II and LTA III positions."

*The Board's order sustaining the grievance is affirmed. The back pay award is reversed and remanded for a determination of an appropriate remedy in accordance with this order.*