Danny T. **GREENWAY**, Plaintiff–Appellee Cross–Appellant,

v.

The **BUFFALO HILTON HOTEL**, Defendant–Appellant Cross–Appellee.

Docket Nos. 97–7220, 97–7269.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1997.

Decided April 30, 1998.

Warren M. Davison, Baltimore, MD (Samantha Rosenberg, Littler, Mendelson, Fastiff, Tichy & Mathiason, P.C., Baltimore, MD; A. Michael Weber, Littler, Mendelson, Fastiff, Tichy & Mathiason, P.C., New York City, of counsel), for Defendant–Appellant.

David P. Marcus, Buffalo, NY (Tamara M. Giordano, Marcus, Knoer, Crawford & Hilton, LLP, Buffalo, NY, of counsel), for Plaintiff–Appellee.

Before: CARDAMONE, WALKER, and LEVAL, Circuit Judges

CARDAMONE, Circuit Judge:

On this appeal we have before us an employee who a jury found had been discriminated against by an employer on account of his disability in violation of federal and state law; that is, there was a wrong against plaintiff from the start. Yet that same employee later also failed to take such action as lay within his power to mitigate his damages flowing from the initial loss of employment. Now we are called upon to decide what duties and responsibilities were imposed upon each of the parties before us and what consequences follow from their failure to abide by applicable rules. Because the employee, after several months of temporary work, did not seek any further employment, he thereby failed to mitigate his damages and, as a result, loses entitlement to compensatory damages to which he might otherwise have been entitled. But, for the discriminatory wrong he suffered in being fired, the employee is entitled to the punitive damages awarded him by the jury, plus interest, costs, and attorney's fees awarded him by the trial court.

The defendant, Buffalo Hilton Hotel, employed plaintiff, Danny T. Greenway, as a

bartender in 1987. At the time, plaintiff had tested positive for HIV, the virus that ultimately causes AIDS, but such information was not (and need not have been) provided at the time of hiring. He worked for five years at the hotel without incident. When in 1992 plaintiff submitted a disability insurance form to his employer, his previously undisclosed HIV-positive condition became known. Matters thereafter went downhill for Greenway at his job and he was eventually fired.

Later, he brought suit against his former employer under the Americans with Disabilities Act and the New York Human Rights Law in the United States District Court for the Western District of New York before Magistrate Judge Leslie G. Foschio. The jury found for plaintiff on the issue of liability and awarded him compensatory damages consisting of $65,000 in back pay, $50,000 for future health insurance premiums, and $324,000 for future medication costs. It also awarded Greenway punitive damages of $1 million, for a total award of $1,439,000. Following motions by the parties, the magistrate judge reduced the back pay award by the $7,700 plaintiff earned after termination, reduced the award of punitive damages to $200,000, and to the compensatory damage award, added $10,000 in front pay. The magistrate judge thus reduced plaintiff's judgment to $637,388 plus attorney's fees and costs, for a total award of $771,093 plus interest. Both parties appeal from different portions of the judgment entered October 23, 1996, and from the amended judgment following the trial court's ruling on damages entered January 22, 1997.

## BACKGROUND

### A. *Facts*

In July 1992 Greenway, who up until that time had been receiving favorable evaluations from his employer, took off a month from work due to fatigue and stress. His disability insurance claim form disclosed his illness to the hotel's personnel director. Despite Hilton's policy of maintaining the confidentiality of an employee's health status, the personnel director informed the hotel's general manager and its food and beverage director that Greenway was HIV-positive. Although the hotel maintains that Greenway's immediate supervisor, Jerome Kulwicki, was not told of this condition, Greenway testified that he had first given the form to Mr. Kulwicki, who "looked it over" and told plaintiff to hand it to the personnel director.

Only one month after plaintiff returned from his leave of absence, and five months after receiving a particularly favorable review in which he was assessed as having "complete mastery of all phases of [his] job," Kulwicki gave him an average to below-average evaluation. Although in April 1992 he had been found to be polite and tolerant of pressure, by September his evaluation stated he was "[s]ometimes tactless" and "easily irritated."

This September 1992 evaluation was followed by four "employee disciplines." Kulwicki issued the first one, labeled a "friendly reminder," on September 29, 1992. It stemmed from an incident in which plaintiff allegedly closed the bar early. Greenway stated in response that he had closed the bar an hour later than its scheduled closing time. The evaluation form stated simply that Greenway had shown "poor judgment in the way he dealt with guests of the hotel." Greenway signed it in protest.

The second discipline, issued on October 30, 1992, resulted from an occasion when Greenway signalled a patron to sign a check for her bar tab. The guest made a negative comment about the plaintiff in her Guest Comment Card and Greenway received a "written warning." He refused to sign that evaluation form.

On January 13, 1993 Hilton suspended Greenway for a week following his third discipline. He had allegedly been rude to a manager in Hilton's engineering department while giving notice of a problem with the heat in the employee bathroom. Greenway signed the form, but wrote Kulwicki a three-page letter describing his version of the events and informing his boss of his belief that he was being targeted for discrimination based on his health status.

In its Employee Handbook, Hilton expressed its policy that a fourth discipline "[c]onstitutes dismissal." Thus, when Green-

way received his fourth discipline, one year later in February 1994, he was terminated. The reason for the fourth complaint appears to be plaintiff's failure to request or accept help during a busy shift at the bar on January 22, 1994. In a letter informing plaintiff of the action to be taken against him, Greenway's supervisors stated that his "failure to improve" and "continued poor performance" left them "no alternative but to terminate [him] at this time."

Hilton informed Greenway that he was eligible to continue his health insurance coverage for at least 18 months at his own expense. Plaintiff paid the $150 premium for three months and then stopped paying, effectively terminating his coverage. After his employment at the hotel ended, Greenway worked from May to October 1994 at a temporary agency and completed a machinist retraining program by January 1996. Nevertheless, he was unable to obtain work as a machinist, and did not attempt to find a bartending job. At the time of oral argument of this appeal, he remained unemployed.

### B. *Prior Legal Proceedings*

Greenway filed a complaint against Hilton on December 1, 1994, alleging that he had been discharged based on a disability—his HIV-positive status—in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the New York Human Rights Law, Executive Law § 297 (McKinney 1993 & Supp.1997). In its answer, Hilton contended that Greenway was not terminated because of his disability, but because the hotel's written policy required such action as a result of the four disciplinary write-ups he had received.

During the trial, plaintiff elicited testimony that the employer's so-called "policy" was not uniformly followed. For example, a waiter who had received 11 written disciplines was not fired. A busboy who received six written disciplines in a 16–month period did not lose his job. Further, another bartender received no written disciplines despite consistent tardiness and difficulties in getting along with his fellow employees. The same bartender was given only a "friendly reminder" after a "physical confrontation" with a guest, as a result of which the guest's jacket was ripped.

This evidence was obviously persuasive to the jury as it found for plaintiff, awarding him the $1.4 million verdict previously described. Following the trial, Greenway filed a motion for pre-judgment interest, front pay, and attorney's fees and costs. Hilton filed motions pursuant to Fed.R.Civ.P. 50 and 59(e) for (1) amendment of the judgment to reduce damages, (2) judgment as a matter of law, or for a new trial, on the issue of liability, (3) judgment as a matter of law on back pay and compensatory damages, and (4) a new trial on punitive damages.

Magistrate Judge Foschio, before whom the parties had agreed to proceed, denied Hilton's motions for judgment as a matter of law and for a new trial, but did reduce the punitive damage award to $200,000, as required by the damage limit contained in the ADA at 42 U.S.C. § 1981a(b)(3)(C). *See Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039, 1048-55, 1055-57 (W.D.N.Y. 1997).[1] The magistrate judge also determined that since Greenway had not failed to mitigate his damages, he was entitled to the $65,000 back pay awarded (less the $7,700 he earned after his termination) and to an additional award of $10,000 in front pay. *See id.* at 1059-62, 1063-64. The magistrate judge found that the $324,000 award for future medication costs was not violative of the exception to New York's collateral source rule and thus affirmed that award, as well as the $50,000 award for future health insurance premiums. *See id.* at 1064-68. Finally, the magistrate judge concluded that Greenway was entitled to pre-judgment interest at a rate of 6.07 percent on his back pay award, plus attorney's fees. *See id.* at 1062-63, 1068-71.

---

1. Although the $200,000 damage limit under 42 U.S.C. § 1981a(b)(3)(C) applies to both compensatory and punitive damages, it affected only Greenway's award for punitive damages because the New York Human Rights Law, which does not allow punitive damages, *see Thoreson v. Penthouse Int'l, Ltd.*, 80 N.Y.2d 490, 499, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992), places no limit on the amount of compensatory damages. *See Greenway*, 951 F.Supp. at 1057.

## DISCUSSION

### I  New Trial

Hilton asserts that it should have a new trial for two reasons. First, it contends that Greenway's counsel made inflammatory statements during his summation, thereby improperly prejudicing the defendant. Second, it alleges the burden-shifting analysis required by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), was improperly applied by the jury. As discussed below, neither argument is meritorious.

### A.  *Inflammatory Statements*

During his closing argument, Greenway's counsel stated

> What motive is there ever for discrimination and prejudice and bigotry? What motive is there ever? Why are people out on the streets and you hear about gay bashing. Why does someone take a baseball bat and whack somebody with it because he thinks he's a homosexual?

Hilton contends that these references to gay-bashing and someone whacking a homosexual with a baseball bat were intended to inflame the jury and suggest that Hilton's actual motivation for firing Greenway was its intolerance towards homosexuals. On that basis, the hotel urges it be granted a new trial.

Greenway responds that the statements contained in his counsel's closing argument were proper and made only to counter Hilton's counsel's opening statement, which suggested that the hotel had no motive for discriminating against Greenway. Hilton's counsel had stated, after discussing the need for a motive in a case such as this, that the usual motive—money—was not present because Greenway's health status did not increase the hotel's insurance costs. For that reason, he insisted "[t]here wasn't any reason for the company to do anything to Danny except treat him like any other employee."

Quite plainly, a party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party by appealing to a jury's possible biases, thereby unfairly influencing its verdict. *See Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931) (setting aside a verdict based on appeals to passion and prejudice); *see also Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 540 (2d Cir.1992). Further, where it appears, as it does in this case, that the complaining party failed to object at trial to the statements, we may reverse only for plain error because that failure deprives the trial court of an opportunity to deal with those remarks then and there. *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17–18 (2d Cir.1996) ("Only where an unpreserved 'error [is] so serious and flagrant that it goes to the very integrity of the trial' will a new civil trial be warranted.") (alteration in original).

The comments made by plaintiff's counsel in this case do not rise to the level of a reversible error, let alone plain error. Federal courts have recognized unfair prejudice and ordered new trials where attorneys have unfairly influenced the jury by attempting to exploit its regional bias, *see, e.g., Pappas*, 963 F.2d at 540–41 (faulting counsel for singling out plaintiff due to his out-of-state status), or by injecting irrelevant allegations about the opposing party into the case, *see, e.g., Alejo Jimenez v. Heyliger*, 792 F.Supp. 910, 919–20 (D.P.R.1992) (setting aside verdict in a medical malpractice suit due in part to defense counsel's statement that plaintiff was a "precocious and promiscuous young woman"). Here, although the lawyer's choice of gay-bashing to illustrate his point of the evils of discrimination—because the jury likely assumed that Greenway was a homosexual—was hardly commendable, we do not think it, given the context of the entire trial and the judge's instruction that statements made by the lawyers were not to be considered as evidence, unfairly influenced the jury's deliberations and verdict. The evidence of Hilton's inconsistent application of its disciplinary policy was sufficient for the jury to have decided properly that the employer's defense was simply a pretext for discrimination, and thereby find for the plaintiff.

We are further persuaded when we consider that the hotel itself tried to inject Greenway's sexual orientation into the case during its summation. Defense counsel stated: "I

am specifically going to ask you not in any way to judge him in his lifestyle or his manner in which he got his disease." The hotel's obvious reference to Greenway's gay lifestyle—a totally irrelevant issue—as part of a disingenuous request, entitled plaintiff's counsel to use the illustrative analogy of discrimination against homosexuals. The two comments cancelled each other out, and it was appropriate therefore for the trial court to deny Hilton's motion for a new trial on the basis of Greenway's closing argument.

### B. *McDonnell Douglas Burden Shifting*

■ We turn now to Hilton's second reason for seeking a new trial, that is the manner in which the jury applied the burden-shifting analysis of *McDonnell Douglas*. In *McDonnell Douglas*, the Supreme Court set out "the order and allocation of proof" in private employment discrimination cases. 411 U.S. at 800, 93 S.Ct. at 1823 (establishing the standard in Title VII cases); *see also EEOC v. Amego, Inc.*, 110 F.3d 135, 145 n. 7 (1st Cir.1997) ("The ADA is interpreted in a manner similar to Title VII, and courts have frequently invoked the familiar burden-shifting analysis of *McDonnell Douglas* in ADA cases."). Following the Supreme Court's directive, plaintiff must initially come forward with facts sufficient to establish a *prima facie* case that his discharge was effected under circumstances giving rise to an inference of discrimination. To make out a *prima facie* case is not a demanding burden. Once met, it creates a presumption that the employer discriminated against the employee in an unlawful manner. *See Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir.1997) (in banc), *cert. denied*, ―― U.S. ――, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

If the plaintiff meets his burden, the burden of production then shifts to the defendant who must proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant's burden also is light. The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would

connote lawful behavior. *See Fisher*, 114 F.3d at 1336. If the employer furnishes such a reason, the *McDonnell Douglas* analysis is complete—"[t]he presumption [of discrimination], having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). The ultimate burden then rests on the plaintiff to persuade the factfinder that the employer's proffered explanation is merely a pretext for its intentional discrimination. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Fisher*, 114 F.3d at 1336, 1339.

In this case, Judge Foschio expected the jury to participate in the burden-shifting exercise and required it to respond to three questions, one for each step of the inquiry. The first question, about which there is no dispute, asked whether the hotel fired plaintiff under circumstances giving rise to an inference of discrimination because of his HIV-positive status. The jury answered "yes." Hilton avers that the jury's response to the next two questions shows that the jurors either misunderstood or deliberately ignored the court's instructions.

Specifically, the jury answered "no" to question number two: "Did the Buffalo Hilton Hotel present evidence that there were legitimate, non-discriminatory reasons for terminating Mr. Greenway from his position as a bartender?" Hilton contends that because it offered evidence of a legitimate reason for the termination—Greenway's four employee disciplines—had the jury properly understood its duty, the only answer to that question should have been "yes." If the jury believed that Hilton's disciplinary policy was merely a pretext, it still could have found for Greenway by answering "yes" to question number three, which asked:

> Were the legitimate reasons given by the Buffalo Hilton Hotel a mere pretext or mere disguise for what was in truth a discriminatory termination? In other words, were the Buffalo Hilton Hotel's reasons for terminating Mr. Greenway not true reasons, but, rather, only excuses for terminating Mr. Greenway because of his disability, and was Mr. Greenway's disabil-

ity a determinative factor in the Buffalo Hilton Hotel's decision to terminate him? The jury did not answer this third question since jurors were told to proceed to the questions on damages if they answered "no" to the second question. Presuming the jury failed properly to answer these questions, the hotel urges it be accorded a new trial.

We find ourselves unpersuaded by the employer's argument. If the hotel truly believed the answer to question number two could only be "yes," it should have alerted Judge Foschio, after the jury came back with its negative answer, that the jury's response could not be correct. But it did not. Such action on Hilton's part would have remedied this problem now presented on appeal by permitting the trial judge to resolve it at that time, while the jury was still present. We believe Hilton's failure to correct the situation when it had the opportunity to do so constitutes a waiver of its right to demand a new trial based on the jury's application of the *McDonnell Douglas* burden-shifting analysis. *Cf. Baskin v. Hawley*, 807 F.2d 1120, 1132 (2d Cir.1986) (reasoning that a party waives its right to appeal errors related to jury instructions unless it made an objection during the trial).

█ Moreover, we do not believe the jury should have been asked to answer question number one or two in the first place. Courts—not juries—should determine whether the initial *McDonnell Douglas* burdens of production have been met. Requiring the jury to play the ping-pong-like match of shifting burdens is confusing and entirely unnecessary because that exercise does not involve any determination of credibility. *See St. Mary's Honor Ctr.*, 509 U.S. at 509, 113 S.Ct. at 2748 ("[T]he burden-of-production determination necessarily *precedes* the credibility-assessment stage.").

Thus, in cases where each party has met its initial burden, as determined by the court, juries should be requested to determine only the ultimate question: has the plaintiff proved that it is more likely than not that he or she was subjected to the adverse employment action based on an illegal discriminatory motive? *See id.* at 509, 511, 113 S.Ct. at 2748, 2749 ("At the close of the defendant's

case, the court is asked to decide whether an issue of fact remains for the trier of fact to determine. . . . The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against [him] because of his race.") (alteration in original).

## II  Damages

Because we affirm the jury's finding of defendant's liability, we pass to Hilton's challenges to the damages awarded Greenway.

### A.  *Mitigation of Damages*

█ After his termination in February 1994, Greenway worked at a temporary agency for six months and completed a machinist training program. He has not worked since October 1994, claiming he has been unable to find work as a machinist. He admits he has not looked for bartending positions ("After the experience that I dealt with in the Hilton, I backed away from anything related to that industry.").

█ Victims of employment discrimination are required to mitigate their damages. *See Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir.1997) (requiring mitigation of damages in a Title VII case); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 908 (2d Cir. 1997) ("The [New York State Human Rights Law] substantially tracks Title VII, both in its requirement that plaintiffs mitigate their damages by seeking and accepting alternative employment and in the legislative purpose behind the law.").

█ A discharged employee must "use reasonable diligence in finding other suitable employment," which need not be comparable to their previous positions. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32 & n. 15, 102 S.Ct. 3057, 3065–66 & n. 15, 73 L.Ed.2d 721 (1982). Typically, the employer has the burden to demonstrate that suitable work existed in the marketplace and that its former employee made no reasonable effort to find it. *See Dailey*, 108 F.3d at 456. In the case at hand, the trial court found that plaintiff

did not actively seek comparable employment following his termination. *See Greenway*, 951 F.Supp. at 1061. Yet it did not overturn the jury's finding that Greenway had reasonably mitigated his damages, on the ground that Hilton had failed to carry its burden of proof regarding the availability of suitable positions. *See id.* at 1061–62. As a result, Greenway's $65,000 back pay award was affirmed and, in addition, the trial judge granted him $10,000 in front pay. *See id.* at 1062, 1064. The trial court also affirmed the awards of $50,000 for future health insurance premiums and $324,000 for future medication costs. *See id.* at 1066. The $324,000 was awarded to cover the $1,100 monthly costs for the prescription medications Greenway must take to treat his HIV-positive condition. Had plaintiff not been fired, those medication costs would have been covered under Hilton's insurance policy.

■ On appeal, Hilton urges us to adopt a rule recognized in other circuits that would absolve it of the burden of demonstrating that suitable employment was available. An employer, under that rule, is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment. *See, e.g., Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir.1991) ("If ... an employer proves that the employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment."); *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir.1990) (same).

This rule provides an appropriate exception to the usual requirement that the employer prove that suitable work exists *and* that the employee has not made reasonable efforts to find it. The underlying rationale is that an employer should not be saddled by a requirement that *it* show other suitable employment in fact existed—the threat being that if it does not, the employee will be found to have mitigated his damages—when the employee, who is capable of finding replacement work, failed to pursue employment at all.

We adopt that concept and apply it to this case, reiterating the district court's finding that Greenway did not exercise reasonable diligence in finding other suitable employment. *See Clarke v. Frank*, 960 F.2d 1146, 1152 (2d Cir.1992). His six months at the temporary agency were just that—temporary. It does not equate to a mitigation of damages because there is no evidence that it followed upon a diligent search for more permanent employment. Further, his participation in a training program under the relevant circumstances does not fulfill his obligation to mitigate. *See EEOC v. Local 638*, 674 F.Supp. 91, 104 (S.D.N.Y.1987) ("An individual who abandons his willingness to search for and return to work and opts to attend school instead generally does not meet his duty to mitigate damages during the time he is in school."); *cf. Dailey*, 108 F.3d at 457 (holding that plaintiff did not fail to mitigate her damages by attending school full-time after unsuccessful job search, distinguishing cases where "a plaintiff voluntarily absents herself from an active job market ... or where the plaintiff completely fails to seek alternate employment prior to enrolling in school"). Hence, since Greenway failed to mitigate his damages, his awards for back and front pay, future health insurance premiums, and future medication costs must be vacated.

Next, we must determine whether plaintiff's failure to mitigate requires us to remand for a new trial. The purpose of awarding damages in employment discrimination cases is to make the victim "whole for injuries suffered on account of unlawful employment discrimination." *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (discussing Title VII). Greenway would be entitled to compensatory damages during the period when he failed to mitigate only if the total compensation (including pay and health benefits) he would have received from comparable employment would have been less than what he received at the Hilton. *See Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 867 (3d Cir.1995) (refusing to deny plaintiff back pay altogether based on the finding that "even had Plaintiff successfully mitigated his damages, he would still not have been made

'whole' absent the award of *some* back pay") (emphasis added).

However, our determination that the hotel is relieved from showing that comparable employment was available also releases the hotel from showing that comparable compensation was available with these potential employers, since the concept of comparable employment encompasses the concept of comparable compensation. Greenway made no showing that comparable compensation was *not* available. As a consequence, his failure to mitigate deprives him of any entitlement to receive an award for front pay, future health insurance premiums, or future medication costs, and those items of compensatory damages need not be remanded for a new trial.

### B. *Other Challenges to the Award*

Hilton raises additional challenges to plaintiff's compensatory damages award, specifically the awards for future health insurance premiums and medication costs, on the bases that they constitute an improper double recovery and violate a statutory exception to New York's collateral source rule. Because we have determined that Greenway is not entitled to those future awards based on his failure to mitigate, a discussion of these additional challenges is unnecessary.

### III   The Cross–Appeal

Greenway cross-appeals, seeking post-judgment interest and a recalculation of the pre-judgment interest awarded by the district court.

### A.   *Post–Judgment Interest*

■ Hilton does not dispute that plaintiff is entitled to post-judgment interest on his award, *see* 28 U.S.C. § 1961(a), but does question the date from which that interest should be calculated. Section 1961(a) simply provides that interest should be calculated as of the "date of the entry of the judgment." Greenway contends that post-judgment interest should begin to accrue from the date of the original judgment, October 23, 1996, as opposed to the date of the amended judgment, January 22, 1997. The district court awarded Greenway *pre-judgment* interest

until the date of the amended judgment, but was silent with respect to post-judgment interest. *See Greenway*, 951 F.Supp. at 1063. Hilton infers from that award that post-judgment interest is to begin accruing only from January 22, 1997.

In *Andrulonis v. United States*, 26 F.3d 1224, 1230 (2d Cir.1994), we held that "[p]ost-judgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment." *Andrulonis* further concluded that post-judgment interest commences from the date a judgment is " 'ascertained' in [a] meaningful way" and "supported by the evidence." *Id.* at 1233 (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990)) (alteration in original). *Compare Lewis v. Whelan*, 99 F.3d 542, 545–46 (2d Cir.1996) (awarding interest from the date of the entry of judgment on remand after the first judgment was vacated) *with Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 620 (2d Cir.) (awarding interest from the date of the original judgment where original judgment was reinstated and "sufficiently substantiated by the evidence"), *cert. denied*, —— U.S. ——, 117 S.Ct. 609, 136 L.Ed.2d 535 (1996).

In this case, judgment was ascertained in a meaningful way on October 23, 1996. Greenway is thus entitled to post-judgment interest from that date. Interest should only accrue, however, on the amount of the reduced judgment we have permitted to stand after this appeal. *See Tinsley v. Sea–Land Corp.*, 979 F.2d 1382, 1383 (9th Cir.1992) (reasoning that interest is allowed to accrue on the original judgment only to the extent it was permitted to stand).

### B.   *Pre–Judgment Interest*

District courts are entitled to award pre-judgment interest on back pay awards in employment discrimination cases. *See Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993) (discussing Title VII). Since we are reversing plaintiff's award of back pay we need not determine the rate of interest that would have been applicable to

such an award, commenting merely that it is within the trial court's broad discretion to elect whether and how to compute pre-judgment interest. *See Commercial Union Assurance Co. v. Milken,* 17 F.3d 608, 613–14 (2d Cir.1994).

## CONCLUSION

For the foregoing reasons, the judgment appealed from insofar as it fixed defendant's liability and punitive damages is affirmed. Insofar as the judgment awarded plaintiff compensatory damages, the judgment is modified by vacating those items of damages and, as modified, the judgment is affirmed with post-judgment interest awarded to plaintiff consistent with this opinion. Costs of the appeal are awarded to plaintiff.

Modified in part, and, as modified, affirmed.