**In re Courtney LILLY (Department of Corrections, Appellant)**

[795 A.2d 1163]

No. 00-258

February 14, 2002. Appellant, the State of Vermont Department of Corrections (State), appeals a ruling of the Vermont Labor Relations Board (Board) which granted back pay and other benefits to Courtney Lilly (grievant) as a result of his improper dismissal by the State. The State argues that the Board abused its discretion by: (1) denying the State's request to reopen the back pay hearing to admit into evidence an affidavit of grievant's former Department of Employment and Training (DET) case manager or to allow for her testimony; (2) awarding grievant back pay from December 4, 1999, to March 11, 2000; and (3) awarding grievant back pay for the first month after his dismissal. Grievant cross-appeals arguing that the Board abused its discretion by refusing to consider grievant's claim that his back pay award should include lost overtime. We affirm.

The State of Vermont dismissed grievant from his correctional officer position at Northern State Correctional Facility (NSCF) on March 19, 1999. At that time, grievant had been an employee of the State for sixteen years. Grievant appealed his dismissal to the Board. After conducting hearings, the Board issued an order on February 24, 2000, determining that grievant was dismissed in violation of Article 14 of the collective bargaining agreement between the State and the Vermont State Employees' Association. The Board ordered the State to reinstate grievant on March 12, 2000, and imposed a ten day suspension for misconduct instead of dismissal.

The Board continued the case to determine the specific back pay and other benefits due grievant from the date commencing ten working days from the effective date of his dismissal until his reinstatement, for all hours of his regularly-assigned shift minus any income received by grievant in the interim. The parties stipulated to certain benefits due grievant but were unable to agree on whether grievant mitigated his damages by attempting to find suitable employment during the period his grievance was pending.

On March 3, 2000, grievant filed a motion to amend the Board order of February 24, 2000, requesting that overtime compensation be considered in determining grievant's back pay award. On the first day of hearings devoted to the damages phase of the grievance, held on March 16, 2000, the Board denied grievant's motion, concluding that there was no provision for overtime in its original order and that overtime work is unpredictable and not part of the regular work week. The second and final day of hearings on damages, held on March 30, 2000, addressed, in part, the State's contention that grievant forfeited his right to back pay by failing to make reasonable efforts to obtain suitable employment and, therefore, mitigate damages. On April 7, 2000, the State filed a motion to reopen the back pay hearing in order to admit the affidavit of grievant's former DET case manager or to allow her to testify. The Board's final order of May 11, 2000, denied that motion.

The Board made the following findings of fact. Grievant did not initially seek employment after his dismissal in March 1999 because he was in shock from losing his job. Grievant applied for and received unemployment compensation from DET beginning on or about May 9, 1999, until December 4, 1999. In order to receive unemployment compensation benefits, the claimant must make an average of three contacts with potential employers each week. DET performs eligibility reviews to ensure that claimants are looking for suitable employment. Griev-

ant met all the requirements necessary to receive unemployment compensation and received benefits totaling $7,414.00.

In May 1999, grievant started seeking employment in the Newport, Vermont area. Grievant has a degree in hotel management and had previously worked as a chef. He spoke to local restaurants about possible employment as a chef and contacted local building supply stores for possible positions. Grievant also traveled to Nevada during the summer of 1999 and spoke with restaurant managers about possible employment. In addition, grievant contacted DET for help in seeking employment, and with DET's assistance, found work as a chef for a private party. The income from this job, $34.80, is the only money that grievant earned during the time he was dismissed.

After his unemployment compensation benefits were exhausted in December 1999, grievant generally looked only for part-time work because the Board hearings were underway and he expected a decision to be forthcoming. He applied to one full-time position as assistant superintendent at NSCF in February 2000.

An employer resource consultant with DET testified that the job market in the Newport, Vermont area was strong, with job offerings in the following areas: truck driving, health care, part-time retail, social work, and numerous food preparation positions. The consultant did not know how much these positions paid or if there were chef positions available.

Based on the above findings of fact, the Board ordered the State to pay grievant only half of his regular pay from December 4, 1999, until his reinstatement on March 11, 2000, to reflect the fact that grievant looked only for part-time work during the period in question. In addition, the Board ordered the State to pay grievant back pay for the first month following his dismissal. This appeal followed.

On June 6, 2000, the State filed a motion for stay pending appeal, challenging in particular two components of the judgment amount: (1) the amount tied to the one month period following grievant's dismissal, or $2,650.22 plus interest, and (2) the half-pay awarded for the period December 4, 1999, to March 11, 2000, or $4,820.71. The Board denied the State's request with respect to the one month period and granted the State's request with respect to the half-pay award.

This Court accords substantial deference to the Board in determinations that lie within its area of expertise, *In re Merrill*, 151 Vt. 270, 272, 559 A.2d 651, 652-53 (1988), and presumes their decisions are correct, valid and reasonable. *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 151 Vt. 457, 460, 561 A.2d 417, 419-20 (1989). In making factual findings, the Board must employ a preponderance of the evidence standard. *In re Muzzy*, 141 Vt. 463, 472, 449 A.2d 970, 974 (1982). We will uphold the Board's findings so long as credible evidence fairly and reasonably supports them, *id.* at 470, 449 A.2d at 973, even if we would not have reached the same decision. *In re Butler*, 166 Vt. 423, 425, 697 A.2d 659, 661 (1997). Such findings will stand even if there exists substantial evidence contrary to the challenged findings. *In re Brooks*, 135 Vt. 563, 567, 382 A.2d 204, 207 (1977). Nevertheless, this Court will reverse the Board's decisions if they are clearly erroneous. *In re Merrill*, 151 Vt. at 273, 559 A.2d at 653.

The State's first argument is that the Board committed reversible error when, in exercising its discretion, it denied the State's request to reopen the record to admit an affidavit of the grievant's former DET case manager or to allow her to testify. The State contends that her affidavit or testimony would directly contradict the grievant's testimony that he contacted her for help in seeking employment after his unemployment compensation had terminated and that therefore her testimony would under-

mine the Board's determination that grievant made reasonable efforts to find suitable employment during the relevant period.

Section 12.17 of the Rules of Practice of the Vermont Labor Relations Board provides, in part, that motions for leave to reopen a hearing because of newly discovered evidence shall be timely made, and the Board may, *in its discretion* or on its own motion, reopen a hearing to take further testimony at any time. In the instant case, the Board declined to reopen the record on the basis of new evidence, concluding that the State did not act with due diligence with respect to obtaining information from the former DET case manager. The Board's ruling is supported by the evidence. As early as October 28, 1999, five full months before the March 30, 2000 back pay hearing, the State deposed grievant and learned that the DET case manager had been involved in assisting grievant find work. Furthermore, at the March 16, 2000 hearing, the State informed the Board that it was aware of potential contradictions between testimony that DET employees could provide and grievant's deposition testimony and answers to interrogatories. The Board concluded that, with due diligence, the State could have anticipated the potential need to make this witness available during the course of the hearings in order to discredit grievant's testimony. The State should not be allowed to relitigate matters in which there was ample time to prepare. As there was no abuse of the Board's discretion in denying the State's motion, its decision is affirmed.

The State's second argument is that after grievant's unemployment benefits were terminated, he did not mitigate his damages to the extent required by law and, therefore, is not entitled to back pay from December 4, 1999, to March 11, 2000. The purpose of back pay is to make the grievant whole and to place the grievant in the position that the grievant would have been absent a violation. See *In re Butler*, 17 V.L.R.B. 247, 345-46 (1994) (grievant who was improperly dismissed from her job in violation of collective bargaining agreement was entitled to full back pay for period of work missed); see generally *Angle v. NLRB*, 683 F.2d 1296, 1301 (10th Cir. 1982) ("purpose of a back-pay order is to . . . mak[e] an employee whole for any losses suffered because of an employer's unfair labor practice.").

This Court recognizes, nevertheless, that a back pay award should ordinarily be fashioned to reflect the aggrieved party's actual damages. See *Kelley v. Day Care Ctr., Inc.*, 141 Vt. 608, 615-16, 451 A.2d 1106, 1110 (1982). Therefore, a proper remedy for an improper dismissal generally is reinstatement with back pay and other emoluments from the date of improper discharge, less sums of money earned or that, without excuse, should have been earned since that date. *In re Brooks*, 135 Vt. at 570, 382 A.2d at 209. An employee thus has a general duty to mitigate damages. *Cartin v. Continental Homes of N.H.*, 134 Vt. 362, 367, 360 A.2d 96, 100 (1976).

While it is the grievant's duty to mitigate, where an employer is claiming that an employee did not properly attempt to mitigate damages, the burden of proof is on the employer. "This may be done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997).

The Board concluded that the State did not meet the first prong of the above two-part test because it failed to show that there was suitable employment available in grievant's geographic area. The general rule is that suitable employment must be substantially equivalent to the position lost and suitable to a person's background and experience. *NLRB v. Westin Hotel*, 758 F.2d 1126,

1130 (6th Cir. 1985). An employer resource consultant with DET testified about the job market in grievant's area, listing available positions in truck driving, social work, part-time retail, health care, and food preparation. The State failed to provide any testimony regarding the salary of the positions that it posited were available. The Board concluded that the State failed to present evidence demonstrating availability of employment substantially equivalent to grievant's prior employment or suitable to his background and experience. The Board's conclusion that the evidence presented by the State did not show the availability of suitable employment is not clearly erroneous, and, therefore, is affirmed.

The Board also determined that the State did not meet its burden of proving that grievant failed to make reasonable efforts to find suitable employment. A wrongfully discharged employee is required to make only a reasonable effort to obtain interim employment, and is not held to the highest standard of diligence. *Kawasaki Motors Mfg. Corp., U.S.A. v. NLRB*, 850 F.2d 524, 527 (9th Cir. 1988). The employee need only make a "good faith effort to find suitable alternative employment." *Schnabel v. Nordic Toyota, Inc.*, 168 Vt. 354, 361, 721 A.2d 114, 119 (1998). An assessment of the reasonableness of a grievant's efforts to mitigate encompasses more than a simple review of the duration of his or her job search. *Dailey*, 108 F.3d at 456. "[I]t entails a consideration of such factors as 'the individual characteristics of the claimant and the job market,' as well as the quantity and quality of the particular measures undertaken by the [grievant] to obtain alternate work." *Id.* at 456 (internal citations omitted).

The Board found that with the exception of applying for the NSCF assistant superintendent position, grievant sought only part-time employment after his unemployment compensation ran out on December 4, 1999. The Board concluded that the State did not offer any credible evidence to rebut this. The Board order appropriately deducted from grievant's back pay award one-half of grievant's regular wages, to reflect the fact that grievant looked only for part-time work during the period in question. Given the State's failure to produce specific evidence indicating lack of diligence, the Board's determination that grievant was sufficiently diligent in his search for part-time employment is supported by the evidence and is not clearly erroneous.

The State urged the Board to adopt an exception to the two-part test outlined in *Dailey* that would absolve it of the burden of demonstrating suitable employment if it can prove that grievant made no reasonable efforts to seek such employment. See *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (adopting this exception and stating that the employer should not be saddled by a requirement that it show other suitable employment in fact existed, when the employee, who is capable of finding replacement work, failed to pursue employment at all). The Board declined to carve out such an exception to the two-part test. We need not address whether this rule provides an appropriate exception in this case as we affirm the Board's determination that the State did not meets its burden of proving that grievant failed to make reasonable efforts to find suitable employment.

Finally, the State appeals the Board's decision to award grievant back pay for the "first month following his dismissal." The State defines this period as the twenty work days during the initial six weeks after dismissal because the back pay award already excludes pay for the ten days grievant was suspended during that six week period. In its July 28, 2000 order denying the State's request for a stay pending appeal, the Board concluded that the State failed to raise this

issue at the hearing and, therefore, waived its right to appeal. The Vermont Department of Personnel human resources director testified at the hearings that the State would not penalize grievant during the first month of his dismissal even if he failed to mitigate his damages completely. The Board concluded that the State's present position is inconsistent with the position it took during previous back pay hearings and declined to grant the State's motion to stay that portion of the Board's order. This Court affirms the Board's decision. The State specifically waived any objection to payment of back pay for the first month in earlier proceedings and, therefore, failed to preserve the issue for appeal.

The last issue on appeal is grievant's claim that the Board abused its discretion by denying grievant's motion that the Board consider his claim for lost overtime back pay during the damages phase of the proceeding. Although the Board generally does not include overtime pay in back pay awards because it is speculative, see *In re Goddard*, 4 V.L.R.B. 189, 190 (1981), in this case it considered grievant's request that he be awarded overtime pay for roll call for each of the weeks he was unlawfully dismissed. Grievant presented evidence that correctional officers at NSCF are required to arrive fifteen minutes prior to the beginning of their shift for roll call and that they are paid overtime for these fifteen minutes. The Board found sufficient evidence to determine that overtime for roll call is predictable and regularly scheduled. Therefore, notwithstanding its general policy not to hear evidence on overtime pay, grievant was afforded the opportunity to present evidence on roll call overtime and was successful in receiving an award for such time.

On appeal, the grievant claims that he was denied the opportunity to seek other overtime compensation beyond that received for roll call. However, he fails to identify what overtime pay he is entitled to receive and made no offer of proof to the Board from which it could have made a determination of entitlement. Vermont Rule of Evidence 103(a)(2) provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party has been affected and the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Without an offer, error will ordinarily not be found. *Isabelle v. Proctor Hospital*, 133 Vt. 200, 202, 333 A.2d 118, 120 (1975). An offer of proof must be specific and concrete, showing what evidence will be introduced, the particular circumstances or conditions covered, and the purpose of the offer. *R.E. Bean Const. Co. v. Middlebury Assocs.*, 142 Vt. 1, 7, 451 A.2d 1096, 1100 (1982). The burden is upon grievant to produce in this Court a record from which it affirmatively appears that error was committed in the hearing below. It is part and parcel of that obligation to establish that the issue involved was presented to the Board in a manner which gave the Board the opportunity to understandingly pass on the question. *State v. Beckenbach*, 136 Vt. 557, 561, 397 A.2d 79, 81 (1978). Grievant failed to make an offer of proof on what evidence he had that would take overtime work out of the realm of speculation. Grievant's failure to make an adequate offer of proof foreclosed the establishment of error below, and the Board's ruling must be affirmed.

*Affirmed.*

Motion for reargument denied March 6, 2002.