2009 VT 45

## In re Appeal of Joel Davidson

[978 A.2d 1]

No. 07-428

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 1, 2009

---

*Michael P. Casey*, General Counsel, Vermont State Employees' Association, Montpelier, and *Susan Edwards* of *Seham, Seham, Meltz & Petersen, LLP*, White Plains, New York, for Appellant.

*William H. Sorrell*, Attorney General, and *William B. Reynolds*, Assistant Attorney General, Montpelier, for Appellee.

¶ 1. **Reiber, C.J.** Joel Davidson was employed by the Department of Public Safety (DPS) until he was dismissed without just cause on January 17, 2006. He took this appeal from a Vermont Labor Relations Board decision denying him back pay for a period of eight months during which the Board determined that he had made "no reasonable efforts" to secure employment. We hold that the Board erred in concluding that this determination precluded Davidson from recovering back pay, and reverse.

¶ 2. The facts may be briefly summarized, and are undisputed except as noted below. Davidson was employed at DPS for approximately eighteen years before his termination in 2006. The Department terminated Davidson based on an allegation that he had lied about his whereabouts while on duty as a police officer. Davidson challenged his termination in a proceeding before the Board, which concluded that he had been terminated without just cause and ordered him reinstated with full back pay and other remedies not at issue here. See *In re Davidson*, 29 V.L.R.B. 105 (2007), available at http://www.state.vt.us/vlrb/NDecisions07.htm.

¶ 3. The State argued before the Board that Davidson had failed to mitigate his damages because he had not made reasonable efforts to seek employment during the period following his termination. The Board agreed in part, concluding that Davidson was not entitled to any damages for the period from January 2006 through August 2006, but was so entitled for the remaining period between his wrongful termination and the reinstatement order. *In re Davidson*, 29 V.L.R.B. 243 (2007), available at http://www.state.vt.us/vlrb/NDecisions07.htm. Davidson filed a motion for reconsideration, which was denied. He appeals.

¶ 4. We will affirm the Board's order if the findings of fact, taken together, support the Board's conclusions. *In re Liquor Control Dep't Non-supervisory Employees*, 135 Vt. 623, 625, 383

A.2d 612, 613 (1978). Matters within the Board's expertise are entitled to deference, and we assume that the Board's actions in such matters are valid and reasonable. *Vt. State Employees' Ass'n v. State*, 2009 VT 21, ¶ 19, 185 Vt. 363, 971 A.2d 641. By contrast, the Board's legal conclusions as to matters outside its expertise are reviewed without deference. We conclude that the Board erred, on these facts, in applying what the Board called "the *Greenway* exception," and reverse.

¶ 5. The Board found the following facts, which are undisputed except as noted. At the time of his dismissal on January 17, 2006, Davidson was earning $27.66 per hour as a state police officer. The basis for his dismissal was an allegation, later determined to be unfounded, that Davidson had falsely claimed to be on patrol at the Rutland Airport when he was not actually there. Davidson's dismissal letter, which contained the allegation, was referenced in some detail in two newspaper articles and a television news story about two and a half months after Davidson was wrongfully terminated. One of the articles noted that Davidson was "alleged to have fabricated records and evidence to support his version of events."

¶ 6. Davidson was deposed on August 21, 2006, in connection with his appeal from his dismissal. His deposition testimony was that he had "made some inquiries, but in light of the articles . . . I have not been able to pursue anything." He stated, however, that he had contacted the United States Marshals Service concerning employment before realizing that "there wasn't much point to my applying" in light of the now-public allegations of dishonesty. He also averred that he had filled out an online application for employment performing support services with the coalition forces in Iraq and Afghanistan, and had spoken with a person there about employment. Finally, he stated generally that he had made "some inquiries . . . verbal contacts, just checking on possibilities." Davidson received no job offers prior to the August 21 deposition, and performed no work for wages during this period.

¶ 7. The Board concluded that Davidson had "failed to make reasonable efforts to find suitable employment" between January 17 and August 21. Then, citing *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998), the Board relieved the employer of the obligation to show that suitable alternative employment was available to Davidson between January 17 and August 21. See *id.* at 53 (noting that "[t]ypically, the employer has the burden to

demonstrate that suitable work existed in the marketplace").
Accordingly, the Board did not award Davidson back pay or other
damages for the period from January 17 through August 21.

¶ 8. The Board found, as to the period *after* August 21, that
Davidson had adequately attempted to mitigate his damages, and
that no alternative employment was truly available to Davidson,
because of the negative publicity surrounding his wrongful termi-
nation and the purported reason therefor. The Board found it
"evident that municipal police departments would not have hired
an individual such as [Davidson] who was dismissed from a police
officer position on dishonesty grounds." The Board further found
that Davidson "would not have been seriously considered for
correctional officer and motor vehicle officer openings given his
dismissal . . . on dishonesty grounds." Thus, the Board concluded,
for the period after August 21, "[t]he Employer has failed to
demonstrate under the circumstances that such positions were
truly available for [Davidson] to seek." The Board also held that
Davidson was not obligated, in mitigation of his damages, to apply
for jobs as a security officer, security guard, or transportation
security administrator, because "the requirement to mitigate dam-
ages does not extend to such significant wage reductions as were
involved here." Because the Board adopted the *Greenway* excep-
tion, it did not explore the apparent contradiction between the
finding that no suitable positions were "truly available" to
Davidson after August 21 and the conclusion that he had failed to
mitigate damages by seeking just such positions before August 21.

■ ¶ 9. Thus, this appeal squarely presents the question of
whether we will adopt, in interpreting the Vermont Labor Rela-
tions Act, the *Greenway* exception. As a general matter, under
both Vermont and federal law, employers bear the burden of
showing that wrongfully discharged employees have failed to
mitigate damages. *In re Lilly*, 173 Vt. 591, 593, 795 A.2d 1163,
1168 (2002) (mem.); see also, e.g., *Greenway*, 143 F.3d at 53;
*Lundy Packing Co. v. NLRB*, 856 F.2d 627, 629 (4th Cir. 1988);
*Iron Workers Local 118 v. NLRB*, 804 F.2d 1100, 1102 (9th Cir.
1986); *NLRB v. Pilot Freight Carriers, Inc.*, 604 F.2d 375, 377
(5th Cir. 1979). The employer must demonstrate that suitable
work existed in the local marketplace *and* that the discharged
employee did not make reasonable efforts to obtain it. *Greenway*,
143 F.3d at 54; *Lilly*, 173 Vt. at 593, 795 A.2d at 1168.

¶ 10. Several of the federal circuit courts of appeal have adopted an exception, however, under which the employer is relieved of the burden of showing that comparable work was available if the employer can first prove that the discharged employee made no reasonable efforts to find it. See *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999); *Greenway*, 143 F.3d at 53-54; *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071; *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990).

¶ 11. As Davidson points out, however, the cases are not monolithic in their approval of *Greenway*-style exceptions. The Sixth Circuit Court of Appeals has declined to adopt such an exception, determining instead that "basic principles of equity and fairness mandate that the burden of proof must remain on the employer because the employer's illegal discharge of the employee precipitated the search for another job." *NLRB v. Westin Hotel*, 758 F.2d 1126, 1130 (6th Cir. 1985); see also *Selland v. Fargo Pub. Sch. Dist. No. 1*, 302 N.W.2d 391, 393 (N.D. 1981).

¶ 12. *Selland*, a North Dakota case, aptly illustrates some of the many reasons that the *Greenway* exception is fundamentally inequitable. There, a teacher over the age of sixty-five was improperly terminated from her position pursuant to a mandatory retirement policy. During the period before her reinstatement, the teacher's efforts to find new employment "consisted of reviewing the want ads in the local newspaper and of inquiring of acquaintances whether or not there were any openings in some of the local school systems." *Id.* The trial court found, and the Supreme Court of North Dakota agreed, that "the evidence clearly shows that Selland failed to exercise reasonable diligence in finding similar employment." *Id.* This finding, however, was "of no consequence" because the employer failed to carry its burden to prove that there was comparable employment available; the evidence was that the only arguably comparable position was seventy-eight miles away, and the employer had not shown that even that position was truly available to a teacher of Selland's age. *Id.*

¶ 13. Similarly, a nearly seventy-year-old sales representative received unmitigated wrongful-discharge damages in *Schiller v. Keuffel & Esser Co.*, 124 N.W.2d 646 (Wis. 1963), despite his admission that he did not seek other work at all after his

termination. The *Schiller* court held that, in light of Schiller's advanced age and narrow experience, it could not be presumed that alternative employment was truly available to him, even though he had failed to seek it. *Id.* at 651. Likewise, the Supreme Judicial Court of Maine awarded unmitigated damages to a teacher who "made no effort to obtain other teaching employment in the area or elsewhere" when the school district failed to show that alternative employment was actually available within a reasonable distance. *Kenaston v. Sch. Admin. Dist. #40*, 317 A.2d 7, 11 (Me. 1974). These cases, and others like them, rest on the proposition, which we endorsed in *Lilly*, that the burden of proof on mitigation rests firmly on the employer. 173 Vt. at 593, 795 A.2d at 1168. See also, e.g., *Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir. 1989) (holding that burden to show failure to mitigate remains on employer even when employee does not make reasonable effort to mitigate); *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1321 (D.C. Cir. 1972) (upholding NLRB decision resolving doubts as to mitigation "against the party who violated the Act" and noting that this "deprives an employer of advantages accruing from a particular method of subverting the Act" (quotations omitted)); *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 378 N.W.2d 558, 567 (Mich. Ct. App. 1985) (upholding undiminished back pay award in part because of the "stigma of the termination" within a niche industry in a small labor market).

¶ 14. The cases just cited, in which the employer retains the burden of proof on the affirmative defense of failure to mitigate, are consistent with our prior cases on mitigation. Although we recognize that there is substantial federal authority — including Second Circuit opinions — concluding otherwise, as a matter of Vermont law we decline to relieve employers who wrongfully terminate employees from the double burden we endorsed in *Lilly*.

¶ 15. The "availability of work" part of the two-part burden we imposed in *Lilly* and our prior cases may also be viewed usefully as a lens through which to determine whether an employee has truly made reasonable efforts to obtain work. That is, as the United States Court of Appeals for the Sixth Circuit has held, "[t]he reasonableness of the effort to find substantially equivalent employment should be evaluated in light of the individual's background and experience and the relevant job market."

*Westin Hotel*, 758 F.2d at 1130; see also *Mason County Bd. of Educ. v. State Superintendent of Sch.*, 295 S.E.2d 719, 724 (W. Va. 1982) (noting that the " 'duty to mitigate' is a limitation on [the employee's] recovery dictated by the local job market" and is "intimately connected with the local availability of work"). In *Westin Hotel*, the Sixth Circuit panel held that the employee's burden to seek alternative employment was lessened by her desire to clear up her wrongful discharge first; like Davidson, she reasonably believed that she would be refused other employment because of the discharge itself. 758 F.2d at 1130. Davidson, terminated for supposed dishonesty, appears to have correctly believed that he would not be considered for any substantially similar jobs. Imposing upon him the burden to seek jobs that were not, as the Board found, actually available, would be inequitable and contrary to the remedial purposes of our law.

¶ 16. Our decision not to adopt the *Greenway* exception imposes no great burden on employers. Indeed, in this case, the evidence adduced regarding the availability of comparable employment *after* August would, in large part, have been relevant to the earlier period as well. In any event, we conclude that the employer's desire to avoid this burden must yield to the principle that a wrongfully terminated employee should not needlessly be punished for his employer's error. This is entirely consistent with our holding in *Lilly* and the cases preceding it. See *Lilly*, 173 Vt. at 593, 795 A.2d at 1165.

¶ 17. A *Greenway*-style exception is simply too blunt an instrument to deal with a situation, like this one, where a terminated employee correctly believes that no comparable employment is available to him *because of* the wrongful discharge itself. This is particularly apparent under the facts here. Davidson was, for nearly two decades, a police officer — an occupation in which honesty is of paramount importance. As the Board found as to the post-August period, Davidson was quite correct to suppose that his spurious firing for dishonesty would preclude any law-enforcement agency from employing him. The Board's decision exalts form over substance in imposing upon Davidson the burden of searching for law-enforcement work during a period in which his prior employer's wrongful discharge of him had rendered him unemployable in the only field he knew. Accordingly, the employer should have been made to meet the burden to show, as to the period between January 17 and August 21, that there was suitable

work available to Davidson *and* that he did not make reasonable efforts to find it.[*]

*Reversed and remanded.*

---

[*] Davidson also claimed, for multiple reasons, that even if *Greenway* applied, he should have received some damages for the January-to-August period. Because we conclude that *Greenway* does not apply, we have no occasion to reach those claims.